[Crim. No. 2181. Fifth Dist. Nov. 13, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO ARREDONDO, Defendant and Appellant.

974

COUNSEL

Robert L. Bouchier, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FRANSON, J.—**

### STATEMENT OF THE CASE

Appellant, 19 years of age, was convicted by a jury of having sexual intercourse with a girl 15 years of age in violation of Penal Code section 261.5. The jury, pursuant to Penal Code section 264, recommended that appellant be punished by imprisonment in the state prison. After referring the matter to the probation office for a report and recommendation as to appellant's suitability for probation the trial court sentenced appellant to prison.

Appellant makes two basic contentions: first, that Penal Code section 264 is unconstitutional insofar as it allows the jury to fix the punishment for a violation of section 261.5, and second, that the jury was improperly instructed as to the extent of its duty in fixing the punishment under Penal Code section 264. Both contentions are without merit. We reverse the judgment, however, because the record does not reflect that the trial

court considered the report of the probation officer before passing on probation and sentencing as required by Penal Code section 1203 and because the trial court apparently believed it was bound by the jury's recommendation that appellant be punished by imprisonment in the state prison.

## STATEMENT OF FACTS

At 10:30 p.m. on June 30, 1974, Donna, 15 years old, was sitting in the back of her father's pickup which was parked near her house. Appellant and four other boys arrived in appellant's pickup. The boys asked Donna to go cruising. She refused at first but acquiesced when asked persistently. Instead of cruising appellant drove Donna and the others on Road 132 to a reservoir. Donna asked where they were going and one of the boys said, "You will see when we get there."

At the reservoir, Donna declined an invitation to go "skinny-dipping." She and one of the four boys sat and talked in the back of the pickup while appellant and the other boys walked a short distance away. Upon their return to the pickup, appellant began kissing and making other sexually oriented contact with Donna. Donna resisted and started to walk home. Appellant and one of the boys caught up with her, and they removed her jeans and underpants. One of the boys then had sexual intercourse with Donna. She did not resist because appellant had told her that if she didn't keep quiet, he was going to knock her out. When the first boy finished, appellant had sexual intercourse with Donna. Subsequently, the other boys, with one exception, had sexual intercourse with Donna. Donna was frightened and crying the entire time.

After appellant and the others were finished, Donna got dressed. Appellant and the others gave her a ride home. When Donna's mother came home, Donna was hysterical.

At about 1:30 a.m. Dr. John Wong examined Donna at the Tulare County Hospital and confirmed that she had had intercourse shortly before the examination.

## DISCUSSION

■ Appellant first contends that the untrammeled discretion vested in the jury by Penal Code section 264[1] to fix the punishment for unlawful

---

[1]Section 264 of the Penal Code provides in pertinent part: "Unlawful sexual intercourse, as defined in Section 261.5, is punishable either by imprisonment in the

sexual intercourse as imprisonment either in the state prison or the county jail is a denial of due process. The contention must fail.

The punishment provisions of Penal Code section 264 have been held constitutional. (*People* v. *Brown* (1973) 35 Cal.App.3d 317, 324, 325 [110 Cal.Rptr. 854]; *People* v. *Wilson* (1971) 20 Cal.App.3d 507, 510-511 [97 Cal.Rptr. 774].) These holdings are based on the United States Supreme Court's decision in *McGautha* v. *California* (1971) 402 U.S. 183 [28 L.Ed.2d 711, 91 S.Ct. 1454] that legislative or judicially articulated standards for the jury's guidance on the issue of punishment in capital cases are not essential to due process. The assumption is that juries "will act with due regard for the consequences of their decisions." (See *McGautha* v. *California, supra,* 402 U.S. at p. 208 [28 L.Ed.2d at p. 726, 91 S.Ct. at p. 1467]; see also *In re Anderson* (1968) 69 Cal.2d 613, 621-628 [73 Cal.Rptr. 21, 447 P.2d 117].) While the death penalty provisions of former Penal Code section 190.1 were held to violate the Eighth Amendment prohibition against cruel and unusual punishment (*Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726]) and the California constitutional prohibition against cruel or unusual punishment (*People* v. *Anderson* (1972) 6 Cal.3d 628, 633 [100 Cal.Rptr. 152, 493 P.2d 880]), the due process holding of *McGautha* has not been overruled.

█ Appellant's contention that Penal Code section 264 denies him equal protection of the law is also without merit. As stated in the context of a Penal Code section 476a violation (providing for punishment in the county jail or state prison at the discretion of the trial judge): "The legislative practice of vesting in trial courts or juries discretion in fixing punishments, within certain limits, is quite general, and not new. Since every person charged with the offense has the same chance for leniency as well as the same possibility of receiving the maximum sentence, there is nothing discriminatory in the statute." (*In re Rosencrantz* (1931) 211 Cal. 749, 751 [297 P. 15].) Because the statute does not on its face establish classifications appellant must show that his sentence to state prison resulted from arbitrary and discriminatory application of the statute. (*Snowden* v. *Hughes* (1944) 321 U.S. 1 [88 L.Ed. 497, 64 S.Ct. 397]; see also *People* v. *Gray* (1967) 254 Cal.App.2d 256, 268 [63 Cal.Rptr. 211].) Appellant has made no factual showing of intentional discriminatory application of the statute.

---

county jail for not more than one year or in the state prison for not more than 50 years, and in such case the jury shall recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison; . . ."

■ Appellant next contends that he was denied equal protection and due process by the giving of CALJIC No. 10.14[2] because the jury was not informed that its recommendation would be binding on the trial court. He asserts that this omission was further compounded by the trial court's re-instruction to the jury that the penalties, if any, would be fixed by the court after the verdict.[3] Specifically, appellant argues that his chances for leniency were diminished because the jury, not knowing that its "recommendation" for penalty under section 264 would bind the trial court, did not give the question of punishment the same careful consideration it would have given if it had been properly instructed on the subject.

While appellant objected to the giving of CALJIC No. 10.14 as unconstitutionally vague for lack of clearly defined standards and as an infringement of the court's function to determine penalty he did not request any clarification of the extent of the jury's duty in fixing punishment under Penal Code section 264, nor did he voice any objection to the re-instruction. ■ Normally, a defendant is held to waive the right to appeal alleged errors by failing to make an appropriate objection in the trial court; however, an appellate court may review any instruction given even though no objection was made in the lower court if the substantial rights of the defendant are affected. (Pen. Code, §§ 1259, 1469.) The cases equate "substantial rights" with reversible error, i.e., did the error result in a miscarriage of justice? (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

---

[2]CALJIC No. 10.14 (1970 rev.) reads: "Unlawful sexual intercourse is punishable either by imprisonment in the county jail or in the state prison. If you find the defendant guilty of unlawful sexual intercourse, you shall recommend by your verdict whether the punishment shall be by imprisonment in the county jail, which would make the crime a misdemeanor, or in the state prison, which would make the crime a felony."

[3]During the jury's deliberations it returned to the courtroom and the following colloquy took place:

"THE FOREMAN: Yes. We have not reached a verdict, and we are questioning whether or not we could find what the different charges entail as to the way of penalties or will that make any difference in our decision?

"THE COURT: Well, the only thing I can do is to re-read the instructions as to the different charges, which will of course give you some idea of penalties.

"THE FOREMAN: Well—

"THE COURT: That's all I can do, *because the penalties, if any, would be fixed by the court after the verdict.* [Italics added.]

"THE FOREMAN: That answers the question, your Honor. Then we could return.

"THE COURT: All right."

The foreman's inquiry about the penalty consequences of the "different charges" undoubtedly had reference to the lesser offenses of battery and contributing to the delinquency of a minor on which the jury was instructed as well as the greater offense of unlawful sexual intercourse.

Whether the jury was properly instructed on the extent of its responsibility for determining the punishment for violating section 261.5—and if not, whether the error prejudiced appellant—in the final analysis depends upon whether the trial court is bound by the jury's recommendation or is free to consider a more lenient sentence by way of probation. If the jury's "recommendation" meant that the court in fact should send the defendant to jail or place him in the state prison as the jury determined, then the re-instruction that the penalty "would be fixed by the court" was error and arguably prejudicial to appellant. On the other hand, if the trial court had the power to grant leniency to appellant by placing him on probation in spite of the jury's recommendation, then the re-instruction was essentially a proper statement of the law, and appellant suffered no prejudice.

Several cases have spoken of the consequences of a jury's recommendation for punishment under Penal Code section 264. In *People v. Pantages* (1931) 212 Cal. 237 [297 P. 890], the defendant was convicted of the rape of a female under the age of 18 years. An instruction was given to the jury which provided that whether the victim of the alleged assault had consented to the act or resisted the attack upon her was wholly immaterial. The court said that this instruction raised the question as to whether under section 264, in determining the punishment, the jury had the right to consider the circumstances surrounding the commission of the rape. In holding that the circumstances had to be considered, the court likened the exercise of discretion under section 264 to the "discretion" given to a jury under then Penal Code section 190 to determine whether a person guilty of first degree murder should suffer death or confinement for life in the state prison. It held that in a rape case, like a capital case, the jury's "recommendation" as to the place where the defendant should be imprisoned "is an essential, inseparable part of the verdict and as such is conclusive and binding upon the trial court as far as the pronouncement by it of the ensuing judgment is concerned." (212 Cal. at p. 270; see also *People v. Sachau* (1926) 78 Cal.App. 702, 704 [248 P. 960].)

In *People v. Rambaud* (1926) 78 Cal.App. 685 [248 P. 954], the defendant was convicted of rape involving a female under the age of 18. The jury recommended confinement in the county jail, but the trial court sentenced the defendant to state prison. In setting aside the sentence the reviewing court found that the Legislature intended in section 264 to vest the trial court with discretion as to punishment only upon a plea of guilty; thus, the jury's recommendation of a county jail penalty was held to be mandatory. (78 Cal.App. at pp. 698-699.)

In *In re Ferguson* (1965) 233 Cal.App.2d 79, 81 [43 Cal.Rptr. 325], the court followed *Rambaud, supra,* in holding that the jury's recommendation that the defendant be punished in the county jail was binding on the trial court, and it could not sentence the defendant to state prison.

None of these cases involved the question of whether, in the face of the jury's recommendation that a defendant be imprisoned in the state prison or in the county jail, the trial court has the discretion to consider the defendant's suitability for probation. Penal Code section 1203 provides that *in every case* in which a person convicted of a felony and is eligible for probation, before judgment is pronounced, the court *shall* refer the matter to the probation officer for investigation and report. The statute specifies the particular crimes for which felony probation cannot be granted as well as those crimes where probation is possible but disfavored. A section 261.5 violation, even though fixed as a felony by reason of the jury's recommendation that the defendant be punished by imprisonment in the state prison, is not one of the crimes for which probation is prohibited or disfavored. Subdivision (c) of section 1203 also provides that in every case in which a defendant is convicted of a misdemeanor the court may either refer the matter to the probation officer or summarily grant or deny probation.

In *People* v. *Mackey* (1975) 46 Cal.App.3d 755 [120 Cal.Rptr. 157], it is held that the trial court did not exceed its jurisdiction in committing a 17-year-old minor convicted of unlawful sexual intercourse with a 14-year-old female to the California Youth Authority even though the jury had, pursuant to section 264, recommended that he be imprisoned at the county jail. The reviewing court noted that section 261.5 is a re-enactment of section 261, subdivision 1, which defined what was formerly known as statutory rape. The 1970 revision of section 264 continued to use the words "the jury shall recommend" as appeared in the section from 1923 to 1970. Prior to 1923 the section had said, "the jury shall determine" the punishment. (See historical note to § 264, West's Pen. Code Ann. pp. 372-373.) The court rejected the concept that a judge could not treat a defendant with more leniency than was recommended by the jury. "A reasonable explanation of the legislative reason for abandoning the word 'determine' in 1923 in favor of 'recommend' is a recognition that the punishment is not determined until judgment is pronounced, and a judge might also grant probation, even in a case in which prison has been recommended." (46 Cal.App.3d at p. 758.) *Mackey* then states: "Although the court may treat a defendant with more leniency than the jury recommends, [it] may not treat a

defendant with more severity than the jury recommends." (46 Cal.App.3d at p. 758.)

■ We agree with this interpretation of Penal Code section 264. In light of the clear language of Penal Code section 1203, the Legislature obviously did not intend to foreclose a trial court's consideration of a defendant's suitability for probation for violating Penal Code section 261.5 even though the jury has fixed the "punishment" by imprisonment in the county jail or in the state prison. This interpretation is also consistent with the language in *People* v. *Pantages, supra,* 212 Cal. at page 270, that the jury's recommendation is binding on the trial court "as far as the pronouncement by it of the ensuing judgment is concerned." We construe this language to mean that where the jury has recommended state prison the trial court must pronounce judgment by sentencing the defendant to state prison, thereby fixing the crime as a felony; but that it thereafter may suspend execution of the judgment and place the defendant on probation subject to whatever terms and conditions in its discretion it sees fit to impose.

Moreover, if Penal Code section 264 is construed to foreclose probation for a 261.5 violation, the statute well might work an unconstitutional denial of equal protection of the law to a defendant so affected. For example, we see no legitimate state interest in denying the possibility of probation to a defendant convicted of violating section 261.5 as contrasted with a defendant who is convicted of forcible rape in violation of section 261, subdivision 2. In the latter case, the defendant is eligible for probation. (*People* v. *Beasley* (1970) 5 Cal.App.3d 617, 634 [85 Cal.Rptr. 501].) The Legislature, by virtue of section 1203, has declared the state's interest in prohibiting probation only to defendants convicted of certain prior felonies, or felonies committed while armed, or to defendants who use a deadly weapon, or willfully inflict bodily injury or torture on their victims. (Pen. Code, § 1203.) Statutes, if possible, must be reasonably construed in a manner upholding their constitutionality; our interpretation of section 264 reaches this result.

We have augmented the record with the probation officer's report and the reporter's transcript of the sentencing hearing. The record does not indicate that the trial court considered the report of the probation officer before passing on probation or sentence as required by Penal Code section 1203. The law is clear that a trial court is without power to deny probation or impose sentence until it has expressly and in the statutory language stated on the record or in writing that it has so read and

considered the report. (Pen. Code, § 1203; *People* v. *Rojas* (1962) 57 Cal.2d 676, 681 [21 Cal.Rptr. 564, 371 P.2d 300]; *People* v. *Williams* (1963) 223 Cal.App.2d 676, 680 [35 Cal.Rptr. 805].)

Also, contrary to the law, the trial court apparently believed that it was bound by the jury's recommendation and that it could not grant probation to appellant. The probation officer had recommended a 90-day diagnostic study under Penal Code section 1203.03, and the district attorney concurred in the recommendation. The court, however, stated: "Well, I don't see any reason for a diagnostic study in this matter after a trial by jury. The jury has recommended state prison . . . I feel I am bound by the recommendation of the jury, . . ."

The judgment is reversed and the action is remanded for consideration of appellant's suitability for probation and re-sentencing as provided by law.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.