[Crim. No. 18153. First Dist., Div. One. Sept. 28, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
BONNIE RAY MORRIS, Defendant and Appellant.

**COUNSEL**

Ronald D. Shannon, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert P. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RACANELLI, P. J.**—On defendant's appeal challenging the validity of a state prison sentence imposed pursuant to the purported terms of a negotiated plea agreement, we examine the novel question whether a trial court may properly condition a prison sentence based solely upon a defendant's failure to appear at the time regularly set for imposition of sentence. We conclude that such an extraordinary practice is invalid as a matter of law. We reverse and remand.

The relevant facts follow: Defendant, then 19 years of age, was charged by information with five counts of aggravated assault (Pen. Code, § 245, subd. (a)), including use of a firearm in the commission of the offenses (Pen. Code, § 12022.5). On July 15, 1977, defendant pled guilty to counts 1 and 2, pursuant to a negotiated plea bargain announced in open court under the terms of which the remaining counts and use clause were to be dismissed, and no actual state prison sentence was to be imposed. The trial judge then announced his intention to summarily impose a state prison sentence with execution stayed for the sole purpose of assuring defendant's appearance upon his being released on his own recognizance (O.R.) pending formal sentencing.[1]

---

[1] In order that the full circumstances surrounding the genesis of the unique sentencing-release agreement may be understood, we report the relevant colloquy herein prior to change of plea in some detail:

"MR. ROLLAND [defense counsel]: At this time, Your Honor, Mr. Morris wishes to withdraw his previously entered plea of not guilty and, pursuant to negotiations with the District Attorney and discussions with the Court, to enter a plea of guilty to Count One and Two, each one being a violation of Section 245(a) of the Penal Code, assault with a deadly weapon, with the understanding that Counts Three, Four, and Five would be dismissed, and that the allegation of use under 12022.5 would be stricken. *The District Attorney has indicated that there will be no physical State Prison pursuant to a negotiated plea*, and the Court has indicated that it would release Mr. Morris today on his own recognizance pending report and sentence with a condition, or at least a strong reminder, that there should be no violations of the law between now and the report and sentence day.

"THE COURT: Well, I want you to understand that I have adopted Judge Lindsay's O.R. system. I'll sentence him to State Prison and stay it until the R&S date. If he doesn't show up, he goes to State Prison. If he does show up, it's reduced to the bargain of no

After defendant indicated his understanding and willingness to waive "all of the important constitutional rights . . . set forth in this form" (a procedure questionable at best under applicable *Boykin-Tahl* requirements),[2] the trial judge accepted defendant's plea of guilty to the designated counts and took the People's motion to dismiss the remaining charges under submission until the time set for sentencing. After the defendant provided assurances of his ability to make bail on the other pending charges, the trial judge then imposed a prison sentence in conjunction with the O.R. release.[3] In the course of a number of continuances to permit the defendant to process a work-furlough application (see Pen. Code, § 1208), the same trial judge, on August 24, 1977, again granted the defendant an O.R. release subject, however, to execution of a written promise to appear (see Pen. Code, §§ 1318-1318.4)

physical. That's maximum incentive. It shouldn't bother him a bit, because he's going to be here anyway, right?"

" . . . . . . . . . . . . . . .

"THE COURT: That way, you see, I don't have to get the O.R. people to interview you and all that. All I do is say if you come back, we'll do what the probation report recommends and what I decide is appropriate on those two counts. But if you don't come back, a warrant will go out, you'll go to State Prison. And that means you're sure to come back, right?

"THE DEFENDANT: [Defendant nods head.]

"THE COURT: Okay."

Following an extended discussion concerning the feasibility of O.R. release in view of other pending charges, the dialogue continued:

"THE COURT: *In other words, we're doing you a favor by putting you on probation,* but we're not doing you a favor, because it would be felony probation. *And if you violated the probation,* you could get a felony sentence in the State Penitentiary. Do you understand that?

"THE DEFENDANT: Uh-huh. So you—So you saying that I would be, if I would violate—*if I got placed on probation and got violated* on that petty theft—

"THE COURT: *You'd be facing the possibility of going to State Prison,* right." (Italics added.)

[2]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449] (cert. den. 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708]).

[3]The unique sentencing release was imposed in the following manner:

"MR. ROLAND: All right. What dates was the Court indicating?

"THE COURT: 10th or 11th or 16th or 17th of August.

"MR. ROLAND: The 11th would be fine for me.

"THE COURT: August 11, 9:00 a.m., Department Ten. All irregularities being waived, the Defendant having pled guilty to two counts of 245(a), it is the judgment and sentence of this Court, formal arraignment being waived and no legal cause being shown, that Mr. Bonnie Ray Morris be imprisoned in the State Prison of the State of California for the term prescribed by law. However, execution of this sentence is stayed to Thursday, August 11th at 9:00 a.m. in Department Ten. [¶] In the meantime, Mr. Morris is released on his own recognizance in this Action No. 64713. If and when he appears in court on August 11th, I will rescind the State Prison sentence *and proceed in accordance with the plea bargain. If he doesn't appear, I'll leave the State Prison sentence outstanding* and issue a warrant and send everybody out to find him. Fair enough?" (Italics added.)

superimposed on the damoclean penalty earlier prophesied in the event of nonappearance. Thereafter, defendant failed to appear on the newly scheduled October sentencing date and was subsequently apprehended in December. At the outset of formal sentencing proceedings on March 20, 1978, defendant expressed his desire to withdraw his plea of guilty if the court intended to follow a diagnostic evaluation report recommending a state prison sentence; that request was expressly denied in the order remanding defendant into custody for purpose of carrying out the previously imposed prison sentence.[4]

# I

It is of course axiomatic that when a plea bargain is made the defendant is entitled to withdraw his plea if the negotiated bargain is incapable of actual fulfillment. (See Pen. Code, § 1192.5; *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 13-15 [136 Cal.Rptr. 409, 559 P.2d 1028]; *People* v. *Johnson* (1974) 10 Cal.3d 868 [112 Cal.Rptr. 556, 519 P.2d 604]; *People* v. *Flores* (1971) 6 Cal.3d 305, 308-309 [98 Cal.Rptr. 822, 491 P.2d 406]; *People* v. *Preciado* (1978) 78 Cal.App.3d 144 [144 Cal.Rptr. 102]; *People* v. *Pinon* (1973) 35 Cal.App.3d 120, 125 [110 Cal.Rptr. 406].) Under the provisions of the authorizing statute, once the plea specifying the punishment is accepted by the prosecutor and approved by the court,

---

[1]We again refer to the record:

"MR. ROLAND: That matter is ready, Your Honor. Thomas Roland for the Defendant.

"We have discussed the matter in chambers, Your Honor, regarding the recommendation on the 1203.03. And I believe that the Court has indicated that you would probably follow that recommendation. I have discussed the matter with Mr. Morris, and it is his understanding and it is true that both the Court and I have read over the transcript of the Report and Sentence—the proceedings on July 15. It is Mr. Morris' understanding that the plea bargain was—there would be no physical state prison.

"THE COURT: *There is no question about that. That was the understanding.*

"MR. ROLAND: He has indicated to me that he did not understand that if he failed to show up for the Report and Sentence date that there would be an automatic state prison. He has indicated to me that he wishes to withdraw his plea of guilty and reinstate his prior plea of not guilty if the alternative is state prison; that he would still be willing to go along with the plea bargain of no physical state prison.

" . . . . . . . . . . . . . . . . . .

"THE COURT: . . . He wanted to be released on his own recognizance. He was told on the record that if he did not show up, he would go to state prison. He had five counts in this matter plus use.

" . . . . . . . . . . . . . . . . . .

". . . And he got a bargain whereby he only pled to two counts and the use was dropped. Then he was sentenced to state prison an [*sic*] those counts which was stayed. *And he was admonished that if he did not show up he would go to state prison.* He then didn't show up in October. And it took us two months and three days to find him. . . ." (Italics added.)

the defendant cannot be sentenced on such plea "to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea." (Pen. Code, § 1192.5.) Moreover, the statute expressly requires that in approving such plea, the court must inform the defendant of the conditional nature of its approval and defendant's right to withdraw his guilty plea in the event such approval is ultimately withdrawn.[5] Inexplicably, that duty was not discharged herein.

██ Defendant's plea in exchange for the prosecutor's agreement to dismiss the remaining charges expressly rejected the possibility of a "physical" or actual sentence of imprisonment. Whether the proffered plea was acceptable was within the exclusive discretion of the court. (Pen. Code, § 1192.5; see *People* v. *Orin* (1975) 13 Cal.3d 937, 942-943 [120 Cal.Rptr. 65, 533 P.2d 193]; *People* v. *Smith* (1971) 22 Cal.App.3d 25, 30 [99 Cal.Rptr. 171].) But the discretion to conditionally approve the negotiated plea bargain did not sanction the wholly unrelated and unbargained condition interjected by the court concerning defendant's candidacy for immediate O.R. release pending contemplated formal sentencing proceedings. No authority validating such an unusual sentencing-release procedure has been advanced or otherwise discovered by us.[6]

The announced purpose of promoting administrative convenience while providing an "incentive" ensuring timely appearance, hardly justifies such a summary sentencing procedure in open conflict with established procedural requirements (e.g., see Pen. Code, § 1203 mandating a probation presentence report and recommendation where defendant is otherwise eligible; see also Pen. Code, § 1200, arraignment for judgment). Moreover, the Legislature already provided adequate means, later invoked herein, calculated to assure a defendant's presence at all necessary stages, including sentencing (see Pen. Code, § 1318 et seq.);

[5]The pertinent language of section 1192.5 provides as follows: "If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. . . ."

[6]The People's reliance on the single case cited (*People* v. *Pinon, supra,* 35 Cal.App.3d 120) [dealing with an aborted agreement due to the court's failure to advise the defendant of the possible effect of a pending charge]), is wholly misplaced. Contrary to the People's construction, *Pinon* is in symmetrical alignment with the line of authority discussed herein holding that a defendant must be sentenced within the limits of the negotiated plea or be afforded an opportunity to withdraw his plea of guilty. (*Id.,* at pp. 124-125.)

under the statutory scheme of O.R. release, a defendant who thereafter fails to appear without justification is subject to punishment upon conviction of the separate offense of a wilful failure to appear (see Pen. Code, § 1319.4) in an action brought at the discretion of the prosecutor, not by peremptory judicial fiat. (See *People* v. *Adams* (1974) 43 Cal.App.3d 697, 707-708 [117 Cal.Rptr. 905]; *People* v. *Municipal Court* (1972) 27 Cal.App.3d 193, 204 [103 Cal.Rptr. 645, 66 A.L.R.3d 717]; cf. *People* v. *Orin, supra,* 13 Cal.3d 937, 943.)

In effect, defendant's punishment was triggered solely by reason of another uncharged, unproven offense. The attempted "short cut" O.R. process, resulting in the immediate sentencing choice of imprisonment, without regard for minimal procedural requirements, was clearly arbitrary and an abuse of discretion. (Pen. Code, §§ 1191, 1203; see *People* v. *Edwards* (1976) 18 Cal.3d 796, 800-801 [135 Cal.Rptr. 411, 557 P.2d 995]; *People* v. *Arredondo* (1975) 52 Cal.App.3d 973, 981-982 [125 Cal.Rptr. 419]; *People* v. *Rojas* (1962) 57 Cal.2d 676, 680-681 [21 Cal.Rptr. 564, 371 P.2d 300]; see also *People* v. *Carl B.* (1979) 24 Cal.3d 212, 218-219 [155 Cal.Rptr. 189, 594 P.2d 14]; cf. Pen. Code, § 1170; Cal. Rules of Court, rules 410 and 418.) Nor does the fact that execution was stayed, and a probation report and diagnostic evaluation thereafter received, sanitize the tainted procedure. As the trial judge made unmistakably clear, defendant was sentenced to state prison notwithstanding the terms of the negotiated plea simply by reason of his failure to "show up" at the time of formal sentencing. (See fn. 1, *ante.*)

While trial courts are encouraged to fashion procedural innovations, consistent with due process requirements, designed to effectively and fairly expedite the processing of criminal cases, we cannot condone unconventional techniques which clearly infringe upon a defendant's basic rights or otherwise fetter prosecutorial discretion as are here manifested.

Since the defendant was not accorded the full benefits of the negotiated plea bargain, unhindered by the invalid condition, he was entitled to withdraw his plea of guilty and enter a new and different plea to the original charges upon reinstatement.[7] (See *People* v. *Kaanehe, supra,* 19

---

[7] We obviously reject the rationale underlying the People's contention that by acceding to the judicially imposed condition, defendant validly pleaded to a prison sentence properly conditioned upon his appearance. As we have explained, the appended condition and resulting sentence were wholly ineffectual. At best, the engrafted condition could only be plausibly construed as a separate condition to *final* judicial approval of the terms of the negotiated plea precluding an actual prison sentence. However viewed, the

Cal.3d 1, 13-15; cf. *Stuart* v. *Superior Court* (1979) 94 Cal.App.3d 182 [156 Cal.Rptr. 289].) Accordingly, we must reverse the judgment of conviction and remand with directions to set aside defendant's guilty plea, reinstate the original charges filed and undertake further proceedings as appropriate. (See *In re Sutherland* (1972) 6 Cal.3d 666, 671-672 [100 Cal.Rptr. 129, 493 P.2d 857].) In view of our decision, we need not discuss the remaining issues presented on appeal.

Judgment reversed and cause remanded for further proceedings consistent with the views herein expressed.

Elkington, J., and Newsom, J., concurred.

---

result is the same: defendant was entitled to withdraw his plea unless sentenced within the limits of the negotiated bargain.