[No. E039738. Fourth Dist., Div. Two. Mar. 14, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN VARGAS, Defendant and Appellant.

COUNSEL.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez, Garrett Beaumont and Lynn McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, J.**—Pursuant to a plea agreement, defendant and appellant Juan Vargas (hereafter defendant) pled no contest to one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2)), and admitted a "strike" enhancement (Pen. Code, §§ 1170.12, subd. (a), 667, subd. (d)) in return for a state prison sentence to the low term of two years, doubled to four years under the "Three Strikes" law, and the district attorney's agreement to dismiss a second count and another enhancement. As part of the plea, defendant agreed to a so-called *Cruz*[1] waiver, pursuant to which he was released from custody in return for his promise, among other things, to not commit other crimes and to return for sentencing or face a maximum term sentence which in this case would be four years, doubled to eight years under the Three Strikes law.

Defendant returned for sentencing on the date specified in his plea agreement and *Cruz* waiver (September 19, 2005) but the trial court continued the sentencing hearing initially to October 14, 2005, then several times more, and ultimately to January 13, 2006. In the interim, on October 6, 2005, defendant committed another crime, a residential robbery.[2] Because of that

---

[1] *People v. Cruz* (1988) 44 Cal.3d 1247, 1254, fn. 5 [246 Cal.Rptr. 1, 752 P.2d 439] (*Cruz*).

[2] We grant defendant's request to take judicial notice, pursuant to Evidence Code section 452, subdivisions (a) and (c), of the felony complaint and defendant's change of plea in the robbery case, San Bernardino County Superior Court case No. FSB052441.

crime, which the court viewed as a violation of defendant's *Cruz* waiver, the trial court sentenced defendant to the maximum term of eight years in state prison, rather than four years.

Defendant's contentions in this appeal, the details of which we recount below, are all directed at challenging that eight-year sentence.[3]

## DISCUSSION

### 1.

### VIOLATION OF *CRUZ* WAIVER

Defendant contends, citing principles that govern the interpretation of contracts, that he did not violate the *Cruz* waiver because the waiver was effective only until September 19, 2005, and he committed the robbery after that date. The Attorney General acknowledges that defendant's change of plea form includes a handwritten notation "Cruz waiver until 9/19/05," that being the date originally set for defendant's sentencing, but contends that the waiver was to remain in effect until defendant was sentenced, an intent evidenced by the standardized preprinted terms of the *Cruz* waiver set out in the change of plea form, as well as by the trial court's advisement to defendant at the time he entered his change of plea. We agree with the Attorney General for reasons we now explain.

Resolution of this issue turns, as defendant notes, on principles pertinent to contract interpretation because "[a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." [Citations.]' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into

---

[3] Because they are not relevant to the sentencing issues defendant raises in this appeal, we will not recount the facts of defendant's crime.

the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.]' [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767 [37 Cal.Rptr.3d 354, 125 P.3d 290].)

Application of these principles to defendant's plea agreement leads us to conclude that the parties intended defendant's *Cruz* waiver to remain in effect until defendant actually was sentenced, and that did not occur until after defendant committed the robbery. The standardized preprinted *Cruz* waiver provision set out in the change of plea form, states in pertinent part, that in return for being released on his own recognizance and as part of his plea bargain agreement, defendant waives his right to withdraw his plea and his right not to receive any additional punishment for any failure to appear or new offense and, "as a condition of my release, I will: [¶] . . . [¶] c. Appear in court for sentencing, or any other date set by the court. [¶] d. Not violate any law (excluding infractions) between today and the date of sentencing." The change of plea form also includes the previously mentioned handwritten notation, "Cruz waiver until 9/19/05."

Defendant argues that the handwritten notation prevails over the standardized terms of the printed form, and therefore the *Cruz* waiver was in effect only until September 19, 2005. To support his claim defendant cites Civil Code section 1651 which states that when handwritten and printed terms in a contract conflict, the handwritten provisions prevail over the printed terms "if the two are absolutely repugnant."[4]

The handwritten and standardized preprinted provisions in defendant's change of plea form do not conflict, and even if they were in conflict, they are not "absolutely repugnant," defendant's contrary claim notwithstanding. The standardized preprinted provision, quoted above, specifies that the *Cruz* waiver will remain in effect until defendant is sentenced. The trial court reiterated the duration of the *Cruz* waiver in taking defendant's guilty plea—"[D]o you understand if you fail to come back to court for any date that I give you for sentencing or violate the law between now and the time I sentence you . . . or if you contact the victim in any way, or possess any firearms or other dangerous or deadly weapons in any way before I sentence you, and I find out about it, instead of getting four years, which you've been

---

[4] Civil Code section 1651 states, "Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

promised here today, you're going to get eight years. I promise you that." The trial court, at the request of defense counsel, then set defendant's sentencing hearing for September 19, 2005, and that date is specified in the handwritten provision.

In short, the handwritten term, or provision, specifies the specific sentencing date the parties agreed to at the time they entered into the plea agreement. Because both the preprinted provision and the handwritten provision both identify the date of sentencing as the pertinent date, the two provisions are not in conflict. Moreover, even if we were to conclude otherwise, the two provisions are not absolutely repugnant. The standardized preprinted *Cruz* waiver specifies the length of time defendant's *Cruz* waiver would remand effective, i.e., until sentencing. The handwritten notation specifies the date the parties originally contemplated that sentencing would occur, "9/19/05."

█ Any doubt that remains as to the parties' intent regarding the duration of the *Cruz* waiver is dispelled by their conduct, which further demonstrates that they intended the *Cruz* waiver to remain in effect until defendant was actually sentenced. That conduct includes the fact that at the time the trial court accepted defendant's guilty plea and the *Cruz* waiver, the trial court clarified that defendant would be released and "be sentenced September 19th to four years in state prison . . . ." Later, when the trial court continued the September 19, 2005, sentencing hearing, defendant remained free on his own recognizance, and the trial court did not require defendant to agree to another *Cruz* waiver. Nor did the trial court require additional *Cruz* waivers at any of the subsequently continued sentencing hearings. In short, it is apparent from the terms set out in the change of plea form, the circumstances surrounding the negotiation of the plea agreement, and the subsequent conduct of the parties that the parties intended the *Cruz* waiver to remain in effect until defendant actually was sentenced in this case. Accordingly, we reject defendant's assertion that the *Cruz* waiver was not in effect in October when he committed the robbery.

**2.**

### VALIDITY OF UPPER TERM SENTENCE

Defendant contends that by automatically imposing the eight-year maximum prison sentence, the trial court violated not only defendant's right to due process but also the terms of the plea agreement. Specifically, defendant argues that the terms of his *Cruz* waiver stated that he could be sentenced to any term "up to" the maximum, and that by automatically imposing the maximum term, the trial court unilaterally modified the plea agreement and thereby violated defendant's due process rights. Defendant's claim omits a

pertinent detail—that the trial court expressly advised defendant that if he violated the terms of the *Cruz* waiver, the trial court would sentence defendant to the maximum term of eight years in prison. By accepting the *Cruz* waiver, defendant agreed to the eight-year sentence.

This case differs from *People v. Jensen* (1992) 4 Cal.App.4th 978 [6 Cal.Rptr.2d 201] (*Jensen*), and *People v. Morris* (1979) 97 Cal.App.3d 358 [158 Cal.Rptr. 722], which defendant cites to support his claim. In both cases, the trial courts unilaterally imposed a condition on the defendant's plea agreement that the defendant had not negotiated with the district attorney and, therefore, to which the defendant had not agreed. In *Jensen*, the defendant had negotiated a plea bargain with the district attorney in which he was to be placed on probation, a condition of which was that he would serve a year in county jail. Before entering his plea, the defendant asked the judge for a stay of execution. The judge explained that in such situations the court's policy was to sentence the defendant to state prison for two years and if the defendant did not show up or committed another crime while out, he would go straight to state prison, " 'there's no revocation or hearing.' " (*Jensen, supra,* 4 Cal.App.4th at p. 980.) If, on the other hand the defendant did show up, the trial court would recall the state prison sentence and place the defendant on probation in accordance with his plea agreement. The defendant twice confirmed that he understood. (*Ibid.*)

On appeal from the state prison sentence the trial court imposed after the defendant failed to appear, the *Jensen* court held that the trial court's so-called "return provision" was not a part of the defendant's plea bargain because the defendant had not freely negotiated that provision nor had he freely agreed to it. Therefore, the return provision violated the defendant's due process rights. (*Jensen, supra,* 4 Cal.App.4th at p. 984.)

In reaching its conclusion, the *Jensen* court relied on "a line of cases beginning with *People v. Morris* . . . which holds that a trial court may not accept a proffered plea agreement and then attach its own return provision to the final bargain." (*Jensen, supra,* 4 Cal.App.4th at p. 981.) The circumstances in *People v. Morris* are nearly identical to those in *Jensen*—the defendant negotiated a plea bargain with the district attorney that provided for no state prison time and included an agreement that the defendant would be released on his own recognizance. When presented with the plea bargain, the trial court informed the defendant that the court had developed its own "O.R. [own recognizance] system" in which the court would sentence the defendant to state prison but stay execution until sentencing. "If [the defendant] doesn't show up, he goes to State Prison. If he does show up, it's reduced to the bargain of no physical [custody]." (*People v. Morris, supra,* 97 Cal.App.3d at pp. 360–362, fn. 1.) On appeal, the appellate court disapproved of the trial

court's procedure, noting that the summary proceeding deprived the defendant of his due process right to be presented with the new charge and have that charge proved. Because the trial court's " 'short cut' O.R. process" did not include even minimal due process procedures, the Court of Appeal found that it was invalid. (*Id.* at p. 364.)

The procedure defendant challenges in this appeal is distinguishable from those disapproved of in both *Jensen* and *People v. Morris*, the most obvious and dispositive difference being that in this case defendant bargained for and agreed to the *Cruz* waiver and its attendant potential for a maximum term prison sentence. In short, defendant agreed that the trial court could impose the upper term sentence if defendant violated the terms of the *Cruz* waiver. Defendant simply is wrong in his assertion that by imposing the bargained for upper term sentence the trial court violated the terms of that agreement and deprived defendant of his right to due process.

 Defendant also contends that the trial court abused its discretion by imposing the upper term prison sentence, that the eight-year sentence violates Penal Code section 654, that the sentence violates defendant's right to a jury trial, and that it constitutes double punishment in violation of the double jeopardy clause. The Attorney General contends that defendant's claims constitute challenges to the validity of his guilty plea, and defendant is precluded from asserting such challenges because he did not obtain a certificate of probable cause in accordance with Penal Code section 1237.5.[5] A certificate of probable cause is not required if the issue on appeal arose after the entry of the plea and does not affect the validity of the plea. (Cal. Rules of Court, rule 8.304(b)(4).) The issue here of course is whether defendant's claims pertain to issues that arose after the entry of his plea.

When the issue on appeal challenges the defendant's sentence following a guilty plea or plea of nolo contendre, the determining factor in deciding whether the issue arose before entry of the plea such that a certificate of probable cause is required is whether the plea agreement specifies a particular sentence or whether it specifies a sentence range. " '[A] challenge to a negotiated sentence imposed as part of a plea bargain is properly viewed as a challenge to the validity of the plea itself' and thus requires a certificate of probable cause. [Citation.]" (*People v. Shelton, supra,* 37 Cal.4th at p. 766, quoting *People v. Panizzon* (1996) 13 Cal.4th 68, 79 [51 Cal.Rptr.2d 851,

---

[5] Penal Code section 1237.5 states that a defendant may not appeal from a judgment of conviction based on a plea of guilty or nolo contendre unless "(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

913 P.2d 1061].) In other words, if the defendant agreed to a specific sentence as part of his plea agreement the sentence is an issue that arose before entry of the guilty plea, and in order to challenge that sentence on appeal, the defendant must obtain a certificate of probable cause.

As set out above, although the written terms of the *Cruz* waiver stated that the trial court could impose any sentence up to the maximum, in taking defendant's guilty plea, the trial court expressly advised defendant that if he violated the terms of the *Cruz* waiver, the trial court would sentence defendant to the maximum term of eight years. Defendant confirmed that he understood and, in doing so, agreed to that eight-year sentence as part of the *Cruz* waiver. The *Cruz* waiver in turn was an integral part of defendant's plea agreement. Therefore, defendant's challenge to the agreed-upon sentence is a challenge to the validity of his plea and such a challenge requires a certificate of probable cause. (*People v. Panizzon, supra,* 13 Cal.4th at p. 79.)

Defendant's Penal Code section 654 claim, as well as his remaining challenges to the agreed-upon upper term sentence, arose before entry of his guilty plea and therefore requires a certificate of probable cause. (See *People v. Shelton, supra,* 37 Cal.4th at pp. 766–771 [a challenge under section 654 attacks the validity of the plea and requires a certificate of probable cause].)

As his final contention, defendant claims that by imposing the upper term sentence based on defendant's commission and conviction of a crime while out of custody awaiting sentencing, the trial court violated defendant's constitutional right to a jury. The defect in this claim is that defendant expressly waived his right to a jury when, as part of his *Cruz* waiver, he agreed, among other things "that any willful violation of these terms will be decided by the sentencing judge without a jury and by a preponderance of the evidence. I further understand and agree, that if the court finds any willful violation of these terms, the court will be free to impose any greater sentence than expressly stated in this agreement, up to the maximum penalty for each offense and enhancement to which I am pleading guilty/no contest or admitting, and I will not have any right to withdraw my plea." In short, defendant expressly waived his right to have a jury decide whether he committed the robbery which is the fact that supported the trial court's upper term sentence in this case. Accordingly, we must reject defendant's final claim of error in this appeal.

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 2007, S151931.