Filed 10/5/21  P. v. Roe CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOEL EDWARD ROE,<br><br>    Defendant and Appellant. | C092117<br><br>(Super. Ct. Nos. 19FE001276,<br>19FE012289 ) |

Before admitting to a felony probation violation, defendant Joel Edward Roe agreed to a *Cruz*[1] waiver.  In exchange for a 72-hour release from custody with conditions, defendant offered to waive his presentence credits.  Defendant breached one of the agreement's conditions and the court struck his presentence credits.  On appeal, defendant argues he agreed to waive only conduct credits, not actual credits.  Defendant also contends his trial counsel was ineffective for failing to make this argument at sentencing.  We affirm.

---

[1]    *People v. Cruz* (1988) 44 Cal.3d 1247.

FACTUAL AND PROCEDURAL BACKGROUND

In 2019, defendant pled no contest to three felony drug charges in one case and one felony assault charge in another. Ultimately, the court suspended defendant's aggregate sentence of six years eight months and placed him on five years of felony probation. In late 2019, defendant was arrested for violating probation when his urine tested positive for methamphetamine.

On January 16, 2020, defendant offered to admit violating his probation in exchange for a temporary release from custody pursuant to a *Cruz* waiver. The prosecution objected, arguing no additional time could be leveraged to induce defendant's return because his aggregate sentence was "already at the max." Defendant himself twice offered to give up "additional time." The parties conversed:

"[Defense counsel]: Hold on. Hold on. [¶] We can do this. He has 230 days of credit applied.

"[Prosecutor]: Actual?

"[Defendant]: Yes.

"[Defense counsel]: Yes.

"[Defendant]: And I'll give all of that up.

"[Prosecutor]: Okay. If he agrees to the *Cruz* waiver, he waives all of his credits.

"[Defendant]: Absolutely. Sure."

The conversation shifted to topics involving defendant's girlfriend and then went off the record.[2] After the sidebar, defendant admitted to violating his probation. This exchange followed:

---

[2] Given this switch in discussion before the sidebar, we do not find support in defendant's assertion that his *Cruz* waiver was "further discussed . . . off the record" prior to the court's recitation of the agreement.

"[Court]: And so your request then is to enter into a so-called *Cruz* waiver to be allowed then to be released from custody on [January 20, 2020] and then to then return to reentry court on [January 23, 2020]; is that correct?

"[Defendant]: Yes, Your Honor.

"[Court]: And so we're all clear then, if you were to commit any new violation of law or were to test positive for drugs, then you would -- or fail to appear, of course -- you would then when sentenced would forfeit the good-time work-time credits that you have accrued. Is that your understanding?

"[Defendant]: Yes.

"[Court]: And that's what you want to do?

"[Defendant]: Yes, sir.

"[Court]: All right. [¶] I'll go ahead then and order [defendant] to be released on [January 20, 2020]."

Defendant returned on January 23, 2020, but his urine tested presumptively positive for methamphetamine. Defendant contested, "I was with my girlfriend the whole time. I would never risk that."

At the sentencing hearing, by which point defendant's drug test results were confirmed, defendant contested, "I'm really surprised I came back dirty. . . . [I] would never jeopardize 285 days over that period of time. . . . [¶] [I] would never even have turned myself in if I was using drugs." The court found defendant violated his *Cruz* waiver and struck all presentence credits -- both actual and conduct -- accrued before January 23, 2020. Neither party objected. The court revoked defendant's probation and executed the aggregate sentence of six years eight months. Defendant appealed.

On February 5, 2021, defendant's appellate counsel moved to correct the record. In the motion, appellate counsel argued defendant agreed to waive only good conduct credits. The motion requested the court to award defendant the actual credits accrued

before January 23, 2020.[3]  The judge -- who had also presided over defendant's no contest pleas, *Cruz* waiver hearing, and sentencing hearing -- denied the motion.  The judge provided in a written order, "[T]he record reflects an understanding and agreement that Defendant waived all of his credits earned up to January 23rd. . . .  Although the Court emphasized 'good-time work-time credits' at one point in the proceeding, no 'new bargain' was struck. . . .  Overall, the transcripts from the January 16[th] and March 19[th] proceedings make clear that Defendant proposed and agreed to forfeiting the entire amount of credits earned up to January 23rd."

DISCUSSION

Defendant contends the court violated the terms of his *Cruz* waiver by striking all presentence credits, both actual and conduct.  He argues, per the language of the court, defendant offered to waive only his "good-time work-time" credits.  We disagree.

When a defendant who has pled no contest is temporarily released from custody pursuant to a *Cruz* waiver agreement, the court may impose a more severe sentence if the defendant breaches the agreement's condition, typically by failing to reappear at sentencing.  (*People v. Casillas* (1997) 60 Cal.App.4th 445, 452 ["when the parties themselves agree as part of the plea bargain to a specific sanction for nonappearance, the court need not permit the defendant to withdraw his or her plea but may invoke the bargained-for sanction"]; *People v. Masloski* (2001) 25 Cal.4th 1212, 1223 [upholding "the '*Cruz* waiver' as one of the terms of the plea agreement [where] defendant clearly understood that part of the agreement was that her sentence could be increased in the event she failed to appear for sentencing"].)  Courts interpret *Cruz* waivers as they do

---

[3]  Defendant's appellate counsel brought the motion pursuant to *People v. Fares* (1993) 16 Cal.App.4th 954.  Both the court and the People construed the motion as pursuant to Penal Code section 1237.1, which partially codified *Fares*.  (*People v. Acosta* (1996) 48 Cal.App.4th 411, 419.)

plea agreements because a *Cruz* waiver is part of the plea agreement. (*Masloski*, at pp. 1222-1223; see *People v. Vargas* (2007) 148 Cal.App.4th 644, 647 [applying contract interpretation principles to a *Cruz* waiver].) Like a plea agreement, a *Cruz* waiver is essentially a contract. (See *Masloski*, at p. 1223; *People v. Cunningham* (1996) 49 Cal.App.4th 1044, 1047.)

Here, the parties agree defendant's *Cruz* waiver must be interpreted pursuant to contract interpretation principles. (See *People v. Shelton* (2006) 37 Cal.4th 759, 767.) Clear and explicit contractual language governs. (Civ. Code, § 1638.) If the language is ambiguous, courts interpret the contract as to effectuate the mutual intention of the parties. (Civ. Code, § 1636; *Shelton*, at p. 767.) Courts determine parties' mutual intention by objective manifestations of the parties' intent, including extrinsic evidence such as: the surrounding circumstances of the negotiation; the object, nature, and subject matter of the contract; and the subsequent conduct of the parties. (*Shelton*, at p. 767.) Where the interpretation does not turn on the credibility of extrinsic evidence, courts review the contract de novo.[4] (*People v. Paredes* (2008) 160 Cal.App.4th 496, 507.)

Defendant argues the court's recitation of the agreement constituted the exclusive terms of the *Cruz* waiver. He argues the court's oral statement is the best evidence of the contract because the court recited, had the authority to enforce, and *was a party to* the

---

[4]  Defendant argues his counsel was ineffective for failing to object at sentencing when the court struck defendant's actual presentence credits. The People, however, do not argue forfeiture. The People contend that defendant made the claim cognizable by filing a postjudgment motion to correct his sentence. While defendant did have a statutory obligation to file a motion per Penal Code section 1237.1 prior to raising any appeal based solely on a sentencing challenge, he did not preserve his claim for review with a prompt objection. (*People v. Scott* (1994) 9 Cal.4th 331, 351.) In any event, because the People do not analyze defendant's claim under an ineffective assistance of counsel lens, neither do we.

5

agreement. Defendant's argument misconstrues the court's role in plea bargaining and therefore misconstrues its role in negotiating a *Cruz* waiver.

"It is well settled that a plea bargain is a tripartite agreement which requires the consent of the defendant, the People, and the court." (*People v. Yu* (1983) 143 Cal.App.3d 358, 371.) "Because the charging function is entrusted to the executive, 'the court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of "plea bargaining" to "agree" to a disposition of the case over prosecutorial objection.' " (*People v. Clancey* (2013) 56 Cal.4th 562, 570.) " 'Once the trial court has accepted the terms of the negotiated plea, "[i]t lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." ' " (*People v. Segura* (2008) 44 Cal.4th 921, 931.)

Our Supreme Court has interpreted *Cruz* waivers to be a part of plea agreements. (*People v. Masloski*, *supra*, 25 Cal.4th at pp. 1222-1223 [applying the principle that " 'when the parties themselves agree as part of the plea bargain to a specific sanction for nonappearance, the court need not permit the defendant to withdraw his or her plea but may invoke the bargained-for sanction' "].) In *Masloski*, the defendant argued her *Cruz* waiver was judicially imposed and therefore distinct from her plea agreement. *Masloski*, at p. 1222.) The trial court in *Masloski* repeatedly characterized the *Cruz* waiver as a "contract" and asked the defendant, "Do we have a contract?" (*Masloski*, at p. 1215.) Despite the trial court's oral statements, our Supreme Court held that the *Cruz* waiver's "provision for an increased sentence upon defendant's nonappearance was part of the plea agreement and not 'a judicially imposed afterthought.' " (*Masloski*, at p. 1223.) Thus, like a plea agreement, the *Cruz* waiver was valid and enforceable.

Here, defendant does not seek withdrawal from an invalid agreement. Instead, he argues we should enforce the terms of the judicially imposed afterthought. But the court could only approve of the prosecutor's and defendant's agreement, not -- as defendant

6

suggests -- unilaterally impose its own agreement.[5]  Thus, we are not confined to the court's oral statement when determining the terms of defendant's *Cruz* waiver.

Terms of a plea agreement must be recorded, lest the negotiation fall prey to the "greatest danger" of "secretiveness."  (*People v. West* (1970) 3 Cal.3d 595, 609-610.)  In *West,* our Supreme Court suggested four methods for recording negotiation terms: "(1) the bargain could be stated orally and recorded by the court reporter, whose notes then must be preserved or transcribed; (2) the bargain could be set forth by the clerk in the minutes of the court; (3) the parties could file a written stipulation stating the terms of the bargain; (4) finally, counsel or the court itself may find it useful to prepare and utilize forms for the recordation of plea bargains."  (*Id.* at p. 610.)

Here, the court used the first two of these methods to record the agreement.  First, the parties orally stated the agreement on the record, indicating that defendant agreed to waive "all" of his credits; then, the court orally stated the agreement and used the term "good-time work-time credits."  Second, the clerk set forth the agreement in the minute order and noted actual credits:  "[Defendant] admits probation violation[.]  [¶] [Defendant] enters *Cruz* waiver -- waives *all* CTS [credit time served] if FTA [failure to appear] or dirty test[.]"  (Italics added.)  Because portions of the oral and written statements conflict, the terms of defendant's agreement are ambiguous.  (*People v. Shelton*, *supra,* 37 Cal.4th at p. 767.)  To resolve this ambiguity, we can determine the mutual intention of the parties by looking at objective manifestations of intent, such as the surrounding circumstances and subsequent conduct.  (*Ibid.*)

Looking to the record, it is clear the parties intended for defendant to waive his actual credits, not solely conduct credits.  The prosecution clarified this term by asking, "Actual?"  Both defendant and his counsel replied, "Yes."  The prosecution again

---

[5]     That the court "had authority to fulfill the state's side of the bargain" is irrelevant to the agreement's interpretation.

clarified, "Okay. If he agrees to the Cruz waiver, he waives all of his credits." Defendant himself again answered affirmatively, "Absolutely. Sure." When seeking the *Cruz* waiver, defendant himself offered, "I would be willing to take *any* additional time." (Italics added.) At sentencing, defendant acknowledged the *Cruz* waiver but contended, "I know you probably don't believe me, but I would never jeopardize 285 days over that period of time." While it is unclear whether defendant used actual or conduct credits to calculate the 285 days he referenced, the weight of the record indicates his contention concerned the drug test results -- not the amount of credits the court struck from his sentence. Indeed, only on appeal does defendant distinguish between actual and conduct credits.

In any event, the judge -- who presided over the *Cruz* waiver and sentencing hearings -- subsequently clarified his use of the term "good-time work-time credits." When denying defendant's motion to correct the record, the judge reviewed the transcripts from the *Cruz* waiver and sentencing hearings and concluded defendant agreed to waive all presentence credits in the event he failed to comply with the conditions of his temporary release. In a written order, the judge provided, "[a]lthough the Court emphasized 'good-time work-time credits' at one point in a proceeding, no 'new bargain' was struck."

Based on all the evidence surrounding the making of defendant's plea agreement and the subsequent conduct of the parties, we conclude the mutual intention of the parties was for defendant to waive all his presentence credits, both actual and conduct. Accordingly, defendant's argument to the contrary lacks merit.

Similarly, we reject defendant's contention we should presume the judge accurately stated the agreement on the record at the *Cruz* waiver hearing. (Evid. Code, §664.) "As a general rule, when there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls. [Citation.] [Our] California Supreme Court has also stated that 'a record that is in conflict will be

8

harmonized if possible,' but if the reporter's transcript and the clerk's transcript . . . cannot be reconciled, we do not automatically defer to the reporter's transcript, but rather adopt the transcript that should be given greater credence under the circumstances of the particular case." (*People v. Contreras* (2015) 237 Cal.App.4th 868, 880, quoting *People v. Harrison* (2005) 35 Cal.4th 208, 226.) Under this principle, the record demonstrates the judge did not accurately state the terms of the agreement on the record and we do not defer to his statements.

DISPOSITION

The judgment is affirmed.


/s/_____

Robie, Acting P. J.

We concur:


/s/_____

Mauro, J.


/s/_____

Hoch, J.

9