Opinion
 

 DIBIASO, J.
 

 When a defendant pleads guilty pursuant to a favorable sentence bargain subject to an express condition subsequent, is he or she entitled to withdraw the plea when the condition subsequent (his
 
 *447
 
 nonappearance at sentencing) occurs? For reasons we will explain, the answer is no.
 

 Facts
 

 Luis Manuel Casillas pled no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Germane to this appeal is the following excerpt from the plea proceedings:
 

 “The Court: Louis Manuel Castillas [sic] 68803. Defendant is present with Miss Bukowski and the interpreter. People represented by Mr. Wolf. This is time and place set for preliminary hearing.
 

 “What is the proposed disposition?
 

 “Ms. Bukowski: Mr. Castillas [sz'c] will plead to an [sic] 11377 for ninety days felony probation.
 

 “The Court: Strike the enhancement?
 

 “Ms. Bukowski: Yes.
 

 “The Court: Mr. Castillas [sic], my understanding—
 

 “Ms. Bukowski: Your Honor, I’m sorry, he will also be released OR; and condition of that OR will be that he appear at sentencing on the date stated.
 

 “The Court: All right. If he does not, then ninety day maximum sentence will be three years in prison, is that correct?
 

 “Ms. Bukowski: Yes.
 

 “The Court: Mr. Castillas [sic], as stated by your attorney, is that your understanding of the plea?
 

 “The Defendant: Yes.
 

 “The Court: Maximum sentence under the terms of this plea is ninety days in jail as a condition of felony probation.
 

 “While you’re on probation, if you’re [sic] ever violate[d], you could be sent to state prison for up to what’s left of the maximum sentence of three years.
 

 
 *448
 
 “If that happens, upon your release, you could be placed on parole up to five years. While on parole, if you’re [sz'c] ever violate[d], you could be sent back to state prison for up to one year for each violation of probation.
 

 “Do you understand that?
 

 “The Defendant: Yes.
 

 “The Court: You will be released from custody today; but, if you do not show up to probation, don’t show up for sentencing, the plea of guilty— pardon me, the plea of no contest will remain in effect but instead of a ninety-day maximum, go up to a three-year maximum in state prison if you don’t show up.
 

 “Do you understand that?
 

 “The Defendant: Yes.
 

 “The Court: Because this is a felony, you won’t be sentenced by this court. Sentencing judge wouldn’t go along with the plea bargain, you’ll be able to withdraw your guilty plea or your no contest plea, re-enter a not guilty and come back to this court for further proceedings.
 

 “Do you understand that?
 

 “The Defendant: Yes.”
 

 Released on his own recognizance (OR) pending sentencing, as provided by his plea bargain, Casillas failed to appear for sentencing. After being arrested, he moved to withdraw his no contest plea. The trial court denied the motion and sentenced him to prison for the three-year upper term. On this appeal, he contends the court erred in denying his motion to withdraw his plea because his plea did not include a valid waiver of his right to withdraw his plea (Pen. Code, § 1192.5 (section 1192.5)).
 

 Discussion
 

 Cruz
 

 In
 
 People
 
 v.
 
 Cruz
 
 (1988) 44 Cal.3d 1247 [246 Cal.Rptr. 1, 752 P.2d 439]
 
 (Cruz),
 
 the defendant pled guilty to heroin possession under a plea bargain which provided for felony probation with up to one year local incarceration, or, at defendant’s option, a sixteen-month prison term. Released on bail, the defendant failed to appear for sentencing. Several months later, the defendant having been arrested, the trial court disapproved the plea bargain, denied
 
 *449
 
 the defendant’s motion to withdraw his plea, and sentenced him to prison for the two-year middle term. The Supreme Court held: “Penal Code section 1192.5 provides that a defendant who pleads guilty pursuant to a plea bargain which is subsequently disapproved by the trial court shall be permitted to withdraw the plea if he or she so desires. The issue before us is whether this provision applies when the trial court withdraws its approval because the defendant fails to appear for sentencing. We conclude that the statute applies even to the fleeing defendant, against whom separate sanctions are available under Penal Code sections 1320 and 1320.5.”
 
 (Cruz, supra,
 
 at p. 1249.)
 

 Cruz
 
 disapproved
 
 People
 
 v.
 
 Santos
 
 (1985) 171 Cal.App.3d 67 [216 Cal.Rptr. 911], which had held that a defendant’s failure to appear for sentencing forfeited his or her right either to specific enforcement of the plea bargain or to withdraw the guilty plea.
 
 (Cruz,
 
 supra, 44 Cal.3d at p. 1254.) The Supreme Court in
 
 Cruz
 
 refused to deny section 1192.5 protection to “defendants who plea-bargain in bad faith or ‘breach the bargain’ through illegal acts.”
 
 (Cruz, supra,
 
 at p. 1253.) The court said this rationale “errs ... in characterizing as a ‘breach’ of the plea bargain what is really a separate offense of failure to appear. (See §§ 1320 and 1320.5.) nn The imposition of an additional or enhanced sentence for a separately chargeable offense without the benefit of a trial on that charge, and in the absence of a knowing and intelligent waiver, is clearly offensive to the principles of due process.”
 
 (Ibid.,
 
 fn. omitted.)
 
 [1]
 

 Cruz
 
 followed several appellate opinions which held “that a defendant who fails to appear for sentencing under a plea bargain does not lose the protections of section 1192.5, and must be allowed to withdraw his or her guilty plea should the court refuse to adhere to the original sentencing terms. [Citations.]”
 
 (Cruz, supra,
 
 44 Cal.3d at p. 1250.) But the court added: “We do not mean to imply by this holding that a defendant fully advised of his or her rights under section 1192.5 may not expressly waive those rights, such that if the defendant willfully fails to appear for sentencing the trial court may withdraw its approval of the defendant’s plea and impose a sentence in excess of the bargained-for term. Any such waiver, of course, would have to be obtained at the time of the trial court’s initial acceptance of the plea, and it must be knowing and intelligent.”
 
 (Id.
 
 at p. 1254, fn. 5.)
 
 [2]
 

 
 *450
 

 Cruz’s antecedents
 

 Cruz's
 
 antecedents comprised two distinct fact patterns. In
 
 In re Falco
 
 (1986) 176 Cal.App.3d 1161 [222 Cal.Rptr. 648] and similar cases, no discussion of the consequences of nonappearance occurred during the plea proceedings; when the absconding defendant finally appeared for sentencing the court imposed a harsher disposition than bargained for, denying his request to withdraw his plea.
 
 (Id.
 
 at pp. 1163-1164;
 
 In re Lunceford
 
 (1987) 191 Cal.App.3d 180 [236 Cal.Rptr. 274];
 
 People
 
 v.
 
 Rodriguez
 
 (1987) 191 Cal.App.3d 1566 [237 Cal.Rptr. 137].)
 

 In
 
 People
 
 v.
 
 Morris, supra,
 
 97 Cal.App.3d 358 and
 
 People
 
 v.
 
 Barrero
 
 (1985) 163 Cal.App.3d 1080 [210 Cal.Rptr. 70], after the parties negotiated a plea bargain but before the defendant actually pled guilty, the court itself imposed a condition providing a sanction for the defendant’s nonappearance at sentencing.
 
 (People
 
 v.
 
 Morris, supra,
 
 97 Cal.App.3d at p. 360 [court released defendant OR but summarily imposed state prison sentence with execution stayed pending his appearance at formal sentencing];
 
 People
 
 v.
 
 Barrero, supra,
 
 163 Cal.App.3d at p. 1082 [court released defendant on bail but said nonappearance would result in increased prison term with no right to withdraw guilty plea].)
 

 In addition to protecting a defendant’s established right to withdraw his or her guilty plea if the plea bargain is not honored,
 
 Cruz’s
 
 antecedents vindicated other important policies, including the statutory scheme for OR release, the prosecutor’s discretion to charge crimes, the defendant’s right to trial on criminal charges, and the panoply of procedural requirements for sentencing hearings. “While trial courts are encouraged to fashion
 
 procedural
 
 innovations, consistent with due process requirements, designed to effectively and fairly expedite the processing of criminal cases, we cannot condone unconventional techniques which clearly infringe upon a defendant’s basic rights or otherwise fetter prosecutorial discretion as are here manifested.”
 
 (People
 
 v.
 
 Morris, supra,
 
 97 Cal.App.3d at p. 364.)
 

 The Vargas exception
 

 People
 
 v.
 
 Vargas
 
 (1990) 223 Cal.App.3d 1107 [273 Cal.Rptr. 48] announced this exception to the
 
 Cruz
 
 rule: “In a plea bargain, if the defendant
 
 *451
 
 agrees to a specific greater term to be imposed if he should fail to appear for sentencing, and to a specified lesser term if he does appear, may the trial court impose the greater term if he fails to appear at the sentencing hearing without justification? Our answer is that it can, and we affirm the judgment in this case.”
 
 (People
 
 v.
 
 Vargas, supra,
 
 223 Cal.App.3d at p. 1108.) The court reasoned: “Here, unlike the
 
 Morris
 
 line of cases and
 
 Cruz,
 
 the trial court did not seek to repudiate the plea bargain or to impose a sentence more onerous than that which defendant had agreed to accept as part of the bargain itself. The plea bargain specified the sentence defendant was to receive: two years if he appeared at the sentencing hearing, and five years if he did not.”
 
 (Id.
 
 at p. 1113, fh. omitted.) On this basis, the court concluded that section 1192.5 simply did not apply: “The express agreement for a two-year term required that defendant appear for sentencing. It provided for a five-year term if he did not. The latter condition having occurred, the court was free to impose the agreed upon sentence of five years. It did no less, but no more.”
 
 (Ibid.)
 

 In
 
 People
 
 v.
 
 Murray
 
 (1995) 32 Cal.App.4th 1539 [39 Cal.Rptr.2d 7], this court distinguished
 
 Vargas,
 
 articulating the critical difference between
 
 Vargas
 
 and
 
 Cruz
 
 and its antecedents. “In the present case, it is clear that the plea bargain itself did not contemplate a sentence higher than the four-year middle term. The court did indicate at the time of the guilty plea, separate and apart from the plea bargain, that it would consider releasing appellant from custody on the sentencing date and continue the time for sentencing; the court advised appellant he would be ‘subject to’ a six-year upper term. At the next hearing, the court decided to release appellant pending sentencing and stated that defendant faced a maximum consecutive sentence of seven years . . . four months, if he failed to return to court as promised. The court noted appellant’s release was not part of the plea agreement to which the prosecutor was a party. Ffl] Thus, there was no two-tiered plea agreement as was the case in
 
 Vargas.
 
 The record supports no other conclusion, and the trial court expressly stated that the plea bargain only provided for a four-year sentence. Accordingly, we reject respondent’s contention that sentence was imposed in the present case pursuant to the plea bargain.”
 
 (People
 
 v.
 
 Murray, supra,
 
 32 Cal.App.4th at p. 1545.)
 

 The cases harmonized
 

 From these authorities, we distill the following principles. First, when a defendant fails to appear at sentencing after entering a bargained plea with no discussion about a specific sanction for nonappearance, he or she is entitled to withdraw the plea if the court refuses to honor the plea bargain. Second, the same rule applies when, during the plea proceedings but after
 
 *452
 
 the parties have negotiated the basic plea bargain, the court imposes an additional condition providing a sanction for nonappearance. Third, when the parties themselves agree as part of the plea bargain to. a specific sanction for nonappearance, the court need not permit the defendant to withdraw his or her plea but may invoke the bargained-for sanction.
 

 In the real world, plea bargaining is a multilateral process, involving the trial court as well as the parties. In the universe of plea-bargained cases, judicial involvement may occur anywhere along a continuum, from the outset or only after the parties have reached a tentative agreement. At some point, the judge must approve the deal. This being so, to imply the bargain is in any sense complete before the judge consents to it is simply nonsensical. In plea negotiations, the distinction between the second and third situations discussed above (or between
 
 Morris
 
 and Vargas) may be subtle indeed. The ultimate question will be not whether the bargain occurred in a hermetically sealed environment from which the judge was excluded, but whether the return provision resulted from the give-and-take of plea bargaining or was a judicially imposed afterthought.
 
 [3]
 

 We now apply these principles to the present case.
 

 The principles applied
 

 The present case differs from
 
 Cruz
 
 and the
 
 Falco
 
 line of cases because the plea hearing did include a discussion of a sanction for Casillas’s nonappearance at sentencing. Technically, however, it differs also from
 
 Vargas
 
 because Casillas did not agree “to a specific greater term to be imposed if he should fail to appear for sentencing.” As stated by the plea judge, Casillas agreed that if he did not appear for sentencing after his OR release, “then ninety day
 
 maximum sentence
 
 will be three years in prison.” (Italics added.) As recharacterized by the sentencing judge, the plea provided “the alternative of
 
 unconditional plea
 
 if he failed to appear.” (Italics added.) In sum, Casillas simply agreed the 90-day part of the deal was off should he fail to appear after his OR release.
 

 This distinction is insignificant. We see no reason why the parties should not be free to negotiate a lesser sanction for nonappearance than imposition of a specific greater sentence. Indeed, such a lesser sanction preserves the panoply of procedural protections and rights for the sentencing hearing. Further, because the defendant’s nonappearance does not automatically trigger any particular greater term, the ultimate sentence will not be a de facto
 
 *453
 
 summary punishment for nonappearance but the result of trial court discretion based on all the circumstances. This result seems infinitely more responsive to the concerns voiced by
 
 Cruz
 
 and the
 
 Morris
 
 line of cases than the
 
 Vargas
 
 “two-tiered plea.”
 

 The question remains whether the present case involves a bargained-for provision related to the plea agreement or a judicially imposed, unrelated, unbargained-for term. The relevant transcript leaves no doubt a plea agreement already had been negotiated off the record. The agreement included the understanding Casillas “will also be released OR; and condition of that OR will be that he appear at sentencing on the date stated.” From the court’s immediate statement of the consequences of nonappearance (“If he does not, then ninety day maximum sentence will be three years in prison, is that correct?”) and the rapid concurrence of both defense counsel and Casillas, we infer the sanction itself had been negotiated and was not simply imposed by the court.
 
 [4]
 

 In sum, we are persuaded the return provision was a valid part of the plea agreement itself and, therefore, enforceable without regard to section 1192.5.
 
 [5]
 
 Thus, the trial court properly denied Casillas’s motion to withdraw his guilty plea.
 

 Disposition
 

 The judgment is affirmed.
 

 Stone (W. A.), Acting P. J., and Harris, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied April 1, 1998.
 

 [1]
 

 The court refused to distinguish between defendants who commit fraud to secure a plea bargain and those who avoid or waive the bargain by flight
 
 (Cruz, supra,
 
 44 Cal.3d at p. 1253 [“a distinction between types of misconduct which is meaningless at best and at worst confusing”]).
 

 [2]
 

 This enigmatic statement implies a defendant’s release pending sentencing but subject to a sanction for nonappearance may be an appropriate subject for plea bargaining. Despite this,
 
 *450
 
 one senses in the
 
 “Morris (People
 
 v.
 
 Morris
 
 (1979) 97 Cal.App.3d 358 [158 Cal.Rptr. 722]) line of cases” the belief that the “deal” is a bad one for all concerned—the defendant who risks a substantial increase in his or her sentence in exchange for one last taste of freedom, the prosecutor who risks the practical loss of the benefit of the bargain if the defendant absconds, the judge who ordinarily might remand the convicted felon to custody, and, finally, the public which is exposed to the risk of further criminality.
 

 [3]
 

 To avoid the risk the return provision may be invalidated by an appellate court, future plea bargainers might consider taking the route suggested by the
 
 Cruz
 
 footnote, i.e„ an express waiver at the time of the plea of the defendant’s section 1192.5 rights.
 

 [4]
 

 Of course, we have no way of knowing who first broached the sanction, defense counsel, prosecutor, or judge. Equally unknowable on this record is whether the sanction represented the court’s “policy” for presentencing OR releases. Our inability to trace the sanction to its origin does not concern us. Since the prosecutor does not have the power to order defendants released from custody, at some point in any negotiation the parties must secure the court’s agreement.
 

 [5]
 

 After telling Casillas “the plea of no contest will remain in effect” but his maximum exposure would be three years, the plea judge added, “Sentencing judge wouldn’t go along with the plea bargain, you’ll be able to withdraw your ... no contest plea, re-enter a not guilty plea and come back to this court for further proceedings.” We presume the judge meant to address a situation where the sentencing judge rejected the plea bargain for any reason
 
 other than
 
 Casillas’s nonappearance at sentencing.