Filed 8/7/13  P. v. Church CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062490 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF29014) |
| GRANT DONALD CHURCH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Juan Ulloa, Judge.  Reversed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Grant Donald Church contends the trial court erred when it sentenced him to the upper term of three years in state prison instead of the two-year term negotiated in his plea agreement after Church violated his condition of release. Church contends this matter should be remanded for resentencing in accordance with his plea bargain or, if the trial court chooses not to impose that bargained-for sentence, to allow him to withdraw his guilty plea. We agree.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On or about June 19, 2012, two soft drink vending machines located at a store in El Centro, California were found to have their outside metal shells cut and their bill and coin collection boxes removed. An estimated $171 in currency was missing from the vending machines, each of which was valued at about $2,500.

The following day, El Centro police officers stopped Church driving a truck. Police found a handheld circular saw and pry bars in the bed of the truck and 65, $1 bills on Church's person. Church initially admitted the saw belonged to him but changed his story when officers told him they were investigating the vandalism to the vending machines from the previous day. Church then told officers he might know who was responsible for the vandalism. Cut marks on the metal shell of the vending machines matched the cutting disc of the circular saw found in the truck being driven by Church.

---

[1]     The factual summary is derived from the probation officer's report. The parties stipulated there was a factual basis for Church's plea as Church admitted only that witnesses would testify under oath that he possessed and controlled property he knew was stolen.

2

A felony complaint charged Church with receiving stolen property (Pen. Code,[2] § 496, subd. (a); count 1); felony vandalism (§ 594, subd. (a); count 2); and misdemeanor possession of burglar's tools (§ 466; count 3). As to counts 1 and 2, the complaint further alleged Church had a prior conviction for a serious felony. (§ 667, subd. (a)(1).)

On July 10, 2012, Church entered into a negotiated plea agreement in which he pled no contest to count 1 for receiving stolen property in exchange for a two-year midterm suspended prison sentence, imposition of formal probation on the condition he enroll in a one-year residential drug treatment program at Turning Point, and dismissal of counts 2 and 3 and the prior conviction allegation. The change of plea form did not include a *Cruz* waiver.[3] The court set sentencing for July 24, 2012, and Church remained in custody.

On July 24, the court granted Church's request for a continuance of the sentencing hearing to July 27. The prosecutor involved in the plea negotiation was unavailable on July 27, and the court continued sentencing to July 30. In so doing, the court agreed to release Church to the "direct custody [of] any representative from the Turning Point program," inasmuch as there was a bed then available for him, "under the conditions that he obeys all laws, makes all court appearances and follows the instructions of the Turning Point program."

---

[2]   All statutory references are to the Penal Code.

[3]   See *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*), discussed *post*.

Before the July 27 hearing concluded, the People asked for a *Cruz* waiver. In response, the court explained to Church the meaning of a *Cruz* waiver as follows:

"That *Cruz* waiver, Mr. Church, is really important and I'm kind of a stickler for. What it is is this. If you don't come to court when you are supposed to and are ordered to come, unless you have a good excuse -- we call it good cause -- then all bets are off. Whatever agreements have been reached before in return for your plea are no longer. The People are no longer bound by them. So if you agreed to X, now it can be double, triple. You will get sentenced to whatever the Court[] feels is appropriate. If you had agreed on probation, the judge can say, 'Forgot about probation. Send you to state prison,' if that is something the law allows.

"I'm not saying that will happen. I want to make sure you understand all bets are off -- all bets -- if you don't return. And that will be a condition of your release. [¶] Okay.

"[Mr. Church]: Yes.

"THE COURT: Any comment, [defense counsel]?

"[Defense counsel]: No.

"THE COURT: I'll release you. However, it's not strictly speaking just releasing you on the streets. I'll release you to the representatives of Turning Point."

Church and his defense counsel both signed the *Cruz* waiver file-stamped July 27, 2012. It provides: "Negotiated Disposition pursuant to Penal Code [section] 1192.5: [¶] I [Church] understand that if pending sentencing I am arrested for or commit another

4

crime, violate any condition of my release, or willfully fail to appear for my probation interview or for my sentencing hearing, the sentence portion of this agreement will be cancelled.  I understand that I will be sentenced unconditionally, and I will not be allowed to withdraw my guilty/no contest plea."

At the conclusion of the hearing on July 27, the court cautioned Church that he was required to "obey all laws and follow the instructions and rules over at Turning Point."

In the evening of July 27, after spending less than two hours at Turning Point, Church walked away from the program and turned himself in to law enforcement on July 30.  That same day, the court remanded Church into custody for leaving the Turning Point program, set his bail at $100,000 and continued the sentencing hearing to August 7.

The court on August 7 sentenced Church to the upper term of three years in state prison on count 1, to be served in county jail pursuant to section 1170, subdivision (h).

## DISCUSSION

As noted *ante*, Church contends either that the plea bargain should be specifically enforced with his sentence being two years in state prison or that he should be permitted to withdraw his guilty plea.

A.  *Governing Law*

Courts "often have noted that plea agreements are a recognized procedure under our judicial system [citations] and a desirable and essential component of the administration of justice.  [Citations.]  Commentators are in accord, noting that '[b]oth the

5

state and the defendant benefit from plea bargains, the defendant by lessened punishment, the state by savings in cost of trial, increased efficiency, and flexibility of the criminal process.' [Citation.] Additionally, the enactment of sections 1192.3 and 1192.5, governing plea agreements, reflects the Legislature's approval of the practice.

"Under section 1192.5, if a plea agreement is accepted by the prosecution and approved by the court, the defendant 'cannot be sentenced on the plea to a punishment more severe than that specified in the plea . . . .' The statute further provides that if the court subsequently withdraws its approval of the plea agreement, 'the defendant shall be permitted to withdraw his or her plea if he or she desires to do so.'[4] [Citations.]

"In *People v. Cruz, supra*, 44 Cal.3d 1247, 1249, [our high court] held that a defendant who fails to appear for sentencing does not lose the protections of section 1192.5. The defendant in that case pleaded guilty pursuant to a plea agreement that gave him the option of a sentence of up to one year in the county jail with a maximum of five years' probation or 16 months in prison without probation. The defendant failed to appear for sentencing. When he was apprehended more than six months later, the superior court refused to abide by the plea agreement, denied the defendant's motion to

---

4    "Section 1192.5 provides, in relevant part: 'Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea. [¶] If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so.'"

6

withdraw his plea, and sentenced him to a term of two years in prison.  The Court of Appeal affirmed the resulting judgment, concluding that by failing to appear for sentencing, the defendant "'breached the bargain . . . [and] is not entitled to either specific enforcement of that bargain or withdrawal of his guilty plea.'" (*People v. Cruz*, *supra*, 44 Cal.3d at p. 1250, fn. omitted.)  [Our Supreme Court] granted review and reversed the judgment of the Court of Appeal, relying upon a line of Court of Appeal opinions that began with *People v. Morris* (1979) 97 Cal.App.3d 358.

"In *People v. Morris*, pursuant to a plea agreement, the defendant pleaded guilty to two counts of aggravated assault in exchange for the dismissal of the three remaining counts of aggravated assault and a promise that a prison term would not be imposed. Defense counsel noted that the court had agreed to release the defendant on his own recognizance pending sentencing.  The court stated that, in order to ensure that defendants who had been released on their own recognizance appeared for sentencing, it had adopted a practice of sentencing such defendants to prison but staying execution of the sentence until the date set for formal sentencing. As the court explained to the defendant:  "'That way, you see, I don't have to get the O.R. people to interview you and all that.  All I do is say if you come back, we'll do what the probation report recommends and what I decide is appropriate on those two counts.  But if you don't come back, a warrant will go out, you'll go to State Prison.  And that means you're sure to come back, right?'" (*People v. Morris*, *supra*, 97 Cal.App.3d at p. 361, fn. 1.)

7

"The defendant agreed to this arrangement, entered his plea, and was sentenced to prison. Execution of the sentence was stayed, and the defendant was released on his own recognizance until the date set for sentencing. The court reiterated that if the defendant appeared for sentencing, "'I will rescind the State Prison sentence and proceed in accordance with the plea bargain. If he doesn't appear, I'll leave the State Prison sentence outstanding and issue a warrant and send everybody out to find him."' (*People v. Morris*, *supra*, 97 Cal.App.3d 358, 361, fn. 3, italics omitted.) The defendant failed to appear for sentencing and was apprehended two months later. The superior court denied the defendant's motion to withdraw his plea and remanded him to begin serving the previously imposed prison sentence.

"The Court of Appeal in *Morris* reversed, concluding that the superior court lacked the authority to impose 'such an unusual sentencing-release procedure' and that the lower court's authority to approve the terms of the plea agreement 'did not sanction the wholly unrelated and unbargained condition interjected by the court concerning defendant's candidacy for immediate O.R. release pending contemplated formal sentencing proceedings.' (*People v. Morris*, *supra*, 97 Cal.App.3d 358, 363.) The court in *Morris* concluded that the defendant was entitled under section 1192.5 to withdraw his plea in the event the terms of the plea agreement were not enforced.

"Similarly, in *People v. Barrero* (1985) 163 Cal.App.3d 1080, the defendant pleaded guilty to felony joyriding pursuant to an agreement that he would receive a sentence of 16 months in prison. The defendant was told that if he failed to report to the

8

probation department or failed to appear for sentencing, he "'would receive either two or three years in prison, but he would not be allowed to back out of the plea bargain.'" (*Id.* at p. 1082.) Defendant failed to report to the probation department and failed to appear for sentencing. After being apprehended, he was sentenced to three years in prison. Relying upon the decision in *People v. Morris*, *supra*, 97 Cal.App.3d 358, the Court of Appeal reversed, rejecting the People's argument that *Morris* was distinguishable because Barrero had 'bargained away his right to withdraw his guilty plea.' (*People v. Barrero*, *supra*, 163 Cal.App.3d at p. 1085.) In the court's view, the sanction for nonappearance had been "'engrafted'" upon the terms of the negotiated plea agreement and was ineffective. (*Ibid.*) As . . . observed in *Cruz*, because Barrero, like Morris, had not been advised of his right to withdraw his plea under section 1192.5 if the plea agreement was disapproved, 'he could not be deemed to have bargained away his right to withdraw his guilty plea. [Citation.]' (*People v. Cruz*, *supra*, 44 Cal.3d 1247, 1252.)

"Following the decision in *Morris*, [our high court] held in *Cruz* that a defendant who fails to appear for sentencing does not breach the terms of the plea agreement, but commits 'a separate offense of failure to appear. (See §§ 1320 and 1320.5.)' (*People v. Cruz*, *supra*, 44 Cal.3d 1247, 1253.) Accordingly, [the court] held, as noted above, that a defendant who fails to appear for sentencing does not lose the protections of section 1192.5. In a footnote, [it] added the following caveat: 'We do not mean to imply by this holding that a defendant fully advised of his or her rights under section 1192.5 may not expressly waive those rights, such that if the defendant willfully fails to appear for

9

sentencing the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term. *Any such waiver, of course, would have to be obtained at the time of the trial court's initial acceptance of the plea, and it must be knowing and intelligent.*' [Italics added.] (*People v. Cruz, supra*, 44 Cal.3d at p. 1254, fn. 5.)

"In *People v. Vargas* (1990) 223 Cal.App.3d 1107, the Court of Appeal distinguished our decision in *Cruz* and held that a plea agreement validly could provide for a specified greater term to be imposed in the event the defendant failed to appear for sentencing, and to a specified lesser term if the defendant did appear. Vargas pleaded guilty to two counts of possession of controlled substances pursuant to a plea agreement that called for a total sentence of two years in prison if he appeared for sentencing but a total term of five years in prison if he failed to appear for sentencing. The prosecutor described this arrangement as '"a negotiated disposition agreed upon by both sides solely to allow [the defendant] to remain free till the probation and sentence date . . . ."' (*People v. Vargas, supra*, 223 Cal.App.3d at p. 1109, fn. 1.) The defendant and defense counsel confirmed that this was their understanding of the terms of the plea agreement, but defendant was not advised of his right under section 1192.5 to withdraw his plea if the court subsequently withdrew its approval of the plea agreement. The defendant failed to appear for sentencing and was apprehended 14 months later. The court denied the defendant's motion to withdraw his plea and sentenced him to a total term of five years in prison.

10

"The Court of Appeal affirmed the resulting judgment, rejecting the defendant's contention that the sentence violated section 1192.5 as construed in *Cruz*. The court in *Vargas* distinguished 'the *Morris* line of cases and *Cruz*' on the basis that the superior court in *Vargas* 'did not seek to repudiate the plea bargain or to impose a sentence more onerous than that which defendant had agreed to accept as part of the bargain itself.' (*People v. Vargas*, *supra*, 223 Cal.App.3d 1107, 1113.) The provisions of section 1192.5 did not apply because '"the court didn't change the bargain."' (*People v. Vargas*, *supra*, 223 Cal.App.3d at p. 1113.) In so holding, the court in *Vargas* relied upon the decision in *People v. Jackson* (1980) 103 Cal.App.3d 635.

"In *Jackson*, the defendant pleaded guilty to second degree burglary pursuant to a plea agreement in which the People promised to move for the dismissal of a second count of burglary and 'not oppose reduction to a misdemeanor at time of sentencing if no prior record. Six months maximum.' (*People v. Jackson*, *supra*, 103 Cal.App.3d 635, 637.) The trial court approved the plea agreement, taking care to explain to the defendant that the proposed sentence was conditioned upon his having no prior record. The defendant said he understood. After the probation report subsequently revealed that the defendant had an extensive prior criminal record, the court sentenced him to a term of three years in prison.

"The Court of Appeal in *Jackson* affirmed the resulting judgment, rejecting the defendant's argument that he should have been permitted to withdraw his plea and reasoning that section 1192.5 applies only if 'the court makes a unilateral modification in

11

the sentence agreed upon at the time of plea.' (*People v. Jackson*, *supra*, 103 Cal.App.3d 635, 638.) The court explained: 'Here, the court didn't change the bargain. The express agreement required a misdemeanor sentence only upon the condition of defendant having a clean record. If that condition were not met, neither the bargain nor the statute gave defendant the right to withdraw his plea.' (*Ibid.*)

"The distinction drawn in *People v. Vargas*, *supra*, 223 Cal.App.3d 1107, between (1) a plea *agreement* that provides alternate sentences depending upon whether the defendant does or does not appear for sentencing as ordered, and (2) a sanction for nonappearance that is *unilaterally* imposed by the trial court, was recognized in *People v. Jensen* (1992) 4 Cal.App.4th 978. The defendant in *Jensen* pleaded guilty to a charge of possession of a concealable firearm by a felon, pursuant to a plea agreement that included a term of one year in county jail. After defense counsel recited the terms of the plea agreement to the court, he requested a 'stay of execution,' indicating he understood the court's policy of ensuring a defendant's appearance by sentencing him or her to a term of two years in state prison and staying execution of that sentence pending the defendant's appearance for sentencing. Defendant failed to appear for sentencing. When he was apprehended, the court ordered execution of the two-year prison sentence and denied the defendant's motion to withdraw his plea.

"The Court of Appeal reversed, concluding that 'the trial court maintained a return policy similar to those criticized in the *Morris* line of cases and sentenced appellant pursuant to such policy rather than the plea bargain agreement reached between appellant

12

and the district attorney.' (*People v. Jensen*, *supra*, 4 Cal.App.4th 978, 982.)

Significantly, the court concluded 'that the return provision was not a valid part of

appellant's plea bargain.' (*Id.* at p. 984.)

"Similarly, the court in *People v. Murray* (1995) 32 Cal.App.4th 1539, found a

nonappearance sanction invalid because it was not part of the plea agreement.  Murray

pleaded guilty to two counts of residential burglary based upon an agreement that he

would be sentenced to no more than four years in prison.  After reciting the terms of the

plea agreement on the record and obtaining the defendant's waiver of his constitutional

rights, the court indicated it would grant the defendant's '"request for a two-week hiatus

before he turned himself in,"' on the condition that if he failed to appear the court would

not be bound by the four-year maximum sentence.  (*Id.* at p. 1542.)  The defendant failed

to appear.  When he was apprehended, the court sentenced the defendant to a total term of

six years and four months in prison.

"The court in *Murray* distinguished the decision in *Vargas*, *supra*, 223 Cal.App.3d

1107, on the basis that, unlike the trial court's action in *Vargas*, 'the plea bargain itself did

not contemplate a sentence higher than the four-year middle term.' (*People v. Murray*,

*supra*, 32 Cal.App.4th 1539, 1545.)  The sanction for nonappearance was imposed by the

court 'separate and apart from the plea bargain.' (*Ibid.*)

"*People v. Casillas* (1997) 60 Cal.App.4th 445, presented a situation analogous to

that in *Vargas*.  Casillas pleaded no contest to possession of methamphetamine pursuant

to a plea agreement under which, with the following conditions, he would be placed on

13

felony probation and serve 90 days in county jail. The agreement provided that the defendant would be released on his own recognizance pending sentencing, but if he failed to appear for sentencing, the maximum sentence would be increased to three years in prison. The defendant failed to appear and later was apprehended. The superior court denied the defendant's motion to withdraw his plea and sentenced him to three years in prison.

"The Court of Appeal in *Casillas* examined the authorities discussed above and distilled the following principles: 'First, when a defendant fails to appear at sentencing after entering a bargained plea with no discussion about a specific sanction for nonappearance, he or she is entitled to withdraw the plea if the court refuses to honor the plea bargain. Second, the same rule applies when, during the plea proceedings but after the parties have negotiated the basic plea bargain, the court imposes an additional condition providing a sanction for nonappearance. Third, when the parties themselves agree as part of the plea bargain to a specific sanction for nonappearance, the court need not permit the defendant to withdraw his or her plea but may invoke the bargained-for sanction.' (*People v. Casillas*, *supra*, 60 Cal.App.4th 445, 451-452.)

"The appellate court in *Casillas* concluded that 'the return provision was a valid part of the plea agreement itself and, therefore, enforceable without regard to section 1192.5.' (*People v. Casillas*, *supra*, 60 Cal.App.4th 445, 453.) The court observed that the plea agreement at issue differed from the agreement involved in *Vargas*, 'because Casillas did not agree "to a *specific* greater term to be imposed if he should fail to appear

for sentencing,'" but found this difference 'insignificant.' (*Id.* at p. 452, italics added.) The court also found insignificant the circumstance that the plea agreement did not specify a greater term of imprisonment as in *Vargas* but, rather, provided for an increase in the maximum possible prison term in the event the defendant failed to appear. The court in *Casillas* stated: 'We see no reason why the parties should not be free to negotiate a lesser sanction for nonappearance than imposition of a specific greater sentence. Indeed, such a lesser sanction preserves the panoply of procedural protections and rights for the sentencing hearing.' (*People v. Casillas*, *supra*, 60 Cal.App.4th at p. 452.)" (*People v. Masloski* (2001) 25 Cal.4th 1212, 1216-1222.)

In *People v. Masloski*, the defendant argued that a provision for an increased sentence in the event the defendant did not appear at sentencing was not part of the plea agreement but was imposed by the trial court as part of a separate "'contract.'" (25 Cal.4th at p. 1222.) Our Supreme Court disagreed, noted that the trial court at the outset of the defendant's plea agreement accurately described the terms of the agreement, which included what the court referred to as a "'*Cruz* waiver'" (*ibid.*), and explained that "a '*Cruz* waiver' signified that defendant could receive an increased sentence of up to six years in prison in the event [the defendant] failed to appear for sentencing." (*Ibid.*) The trial court next confirmed the terms of this agreement with the People and the defendant and his counsel. (*Ibid.*)

Relying on *People v. Casillas*, among many other authorities, our high court in *People v. Masloski*, *supra*, 25 Cal.4th 1212 found that the "'relevant transcript leaves no

15

doubt a plea agreement already had been negotiated' . . . and that the agreement included a provision for an increased sentence in the event defendant failed to appear for sentencing[:]

"Having confirmed the terms of the plea agreement, including the provision for an increased sentence in the event defendant failed to appear, the [trial] court [in *People v. Masloski*] turned its attention to defendant and explained in detail the aspect of the agreement providing that she could receive an increased sentence upon failing to appear for sentencing. The court then obtained defendant's assurance that she understood and agreed to this arrangement. Although the court used the term 'contract' in referring to this part of the agreement, we do not accept defendant's contention that the use of this terminology signified that the '*Cruz* waiver' was not part of the plea agreement. The court apparently used this term, which is familiar to laypersons, to impress upon defendant the importance of this aspect of the agreement and the circumstance that her nonappearance would have serious consequences.

"The decision in *Vargas* observed that the holding in *Cruz*, and the cases upon which it relied, 'serve the objective that plea bargains "'implement the reasonable expectations of the parties . . . .'"' (*People v. Vargas*, *supra*, 223 Cal.App.3d 1107, 1112.) The [*Vargas*] court went on to state: 'That expectation was served in this case. Here, unlike the *Morris* line of cases and *Cruz*, the trial court did not seek to repudiate the plea bargain or to impose a sentence more onerous than that which defendant had agreed to accept as part of the bargain itself. The plea bargain specified the sentence defendant was

16

to receive: two years if he appeared at the sentencing hearing, and five years if he did not. [¶] Neither defendant, his attorney, nor anyone else involved in the plea bargain could have had any reasonable expectation other than that the bargained-for term of five years would be imposed if defendant failed to appear at the sentencing hearing.' (*Id.* at p. 1113, fn. omitted.) The same is true in the present case. The trial court listed the '*Cruz* waiver' as one of the terms of the plea agreement, and defendant clearly understood that part of the agreement was that her sentence could be increased in the event she failed to appear for sentencing. The provision for an increased sentence upon defendant's nonappearance was part of the plea agreement and not 'a judicially imposed afterthought.' (*People v. Casillas*, *supra*, 60 Cal.App.4th 445, 452.)

"Defendant is correct that the superior court, when it accepted defendant's plea of no contest, failed to advise her as required by section 1192.5 of her right to withdraw her plea in the event the court subsequently disapproved the plea agreement. But this error was of no consequence, because the superior court did not disapprove the plea agreement. Rather, when defendant failed to appear on the date set for sentencing, she was sentenced to a term of four years in prison, in accordance with the terms of the plea agreement. The provisions of section 1192.5 that permit a defendant to withdraw his or her plea if the court withdraws its approval of the plea agreement were not implicated, because the court adhered to the terms of the plea agreement by sentencing defendant to a prison term that did not exceed (and in fact was less than) the maximum sentence authorized by the plea

17

agreement in the event that defendant failed to appear on the date set for sentencing."
(*People v. Masloski*, *supra*, 25 Cal.4th at pp. 1222-1224.)

B. *Analysis*

The following facts are undisputed: (1) the July 10, 2012 plea agreement did not include a *Cruz* waiver, inasmuch as that waiver was imposed by the court on July 27—17 days after the plea agreement was negotiated and accepted by the trial court; (2) when Church walked out of the Turning Point program on July 27 after spending less than two hours at the facility, he violated a condition of his release; (3) when the trial court sentenced Church to a three-year prison term, that term not only was not part of the July 10 plea agreement, but it *also* was more onerous than the two-year bargained-for prison term in the plea; and (4) at the time of sentencing, the court did not give Church the option to withdraw his plea despite its refusal to adhere to the terms of the plea agreement.

These facts, which we conclude are supported by ample evidence in the record, lead us to conclude that the trial court erred when it sentenced Church to three years in state prison because neither the three-year term nor the alleged *Cruz* waiver was part of the plea agreement. (See *People v. Cruz*, *supra*, 44 Cal.3d at p. 1254, fn. 5 [noting that any waiver of section 1192.5 must be "obtained at the time of the trial court's initial acceptance of the plea" and must be "knowing and intelligent," and noting that the agreement itself must include a provision for an increased sentence in the event the defendant fails to appear for sentencing or otherwise violates a condition of his or her

18

plea].)  Moreover, the record shows the trial court also erred when it did not permit Church to withdraw his plea after the court chose not to follow the terms of the parties' agreement and instead imposed a three-year prison term for Church's violation of count 1. (See § 1192.5.)

Our decision is entirely consistent with the holding and teaching of our high court in *People v. Masloski* and of the court in *People v. Vargas*, among the many other cases discussed herein, as it is merely an application of the rule that one party to a contract may not after-the-fact impose terms and/or conditions on the other contracting party (i.e., the defendant) that were not part of the bargained-for/negotiated contract (i.e., plea agreement).  (See *People v. Masloski*, *supra*, 25 Cal.4th at p. 1223 [noting that plea agreements serve an important public policy and that this policy is furthered only when an agreement "'"implement[s] the reasonable expectations of the parties"'"].)

## DISPOSITION

Church's sentence is reversed.  On remand, the trial court is instructed either to sentence Church according to the terms of the July 10, 2012 plea agreement or to permit Church to withdraw his plea in accordance with section 1192.5.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.

19