Filed 1/4/22  P. v. McCoshum CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C092483 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 19F4821, 19F2832, 19F4117, 19F4697, 19F4704, 19F4816) |
| v. | |
| JOSEPH LEON McCOSHUM, | |
| Defendant and Appellant. | |

In a global resolution of several cases, defendant Joseph Leon McCoshum entered no contest and guilty pleas and admitted enhancements in exchange for a negotiated sentence.[1] As part of the agreement, defendant agreed to a *Cruz*[2] waiver, pursuant to which he was

---

[1]     Defendant's negotiated sentence required he travel to Oregon to resolve a legal dispute and return to California within one year, after which he would be remanded into custody for six months, and then placed into a drug rehabilitation program.  If defendant complied with the drug program, the court would release him on probation.  If defendant was unable to resolve his Oregon legal issues within one year due to circumstances beyond his control, he would receive 12 years in prison.  And if defendant willfully departed from the negotiated sentence, he would receive the maximum sentence of 26 years and 4 months.

[2]     *People v. Cruz* (1988) 44 Cal.3d 1247.  "A '*Cruz* waiver' gives a trial court the power to 'withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term,' if the defendant" breaches the agreement's conditions.  (*People v. Puente* (2008) 165 Cal.App.4th 1143, 1146, fn. 3; see *People v. Casillas* (1997) 60 Cal.App.4th 445, 452.)

1

released from custody pending sentencing. A few weeks later, defendant was arrested for and charged with violating Health and Safety Code[3] section 11366 -- maintaining a place for the purpose of unlawfully selling, giving away, or using drugs. The trial court found the evidence clearly[4] supported the section 11366 charge and defendant had thus violated the *Cruz* waiver. The trial court declined to follow the negotiated sentence and instead sentenced defendant to a term of 20 years. Defendant appeals.

Defendant asserts the trial court's *Cruz* waiver violation finding is not supported by substantial evidence. The People contend otherwise. The parties agree, however, that the trial court violated Penal Code section 654 when it imposed sentences for both the criminal threats and conspiracy to dissuade a witness counts in one of the cases because the counts were based on the same conduct. We agree with the parties as to the Penal Code section 654 contention and conclude substantial evidence supports the trial court's *Cruz* waiver violation finding.

Because Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1), which amends Penal Code section 654 to provide the trial court with discretion to impose the sentence of either the criminal threats or the conspiracy to dissuade a witness counts, will become effective before defendant's judgment becomes final, we remand the matter for resentencing. (See *In re Estrada* (1965) 63 Cal.2d 740, 744-745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect].) We affirm the judgment in all other respects.

---

[3]     All further section references are to the Health and Safety Code unless otherwise specified.

[4]     The *Cruz* waiver violation finding required a finding by preponderance of the evidence, but the trial court found the evidence satisfied the higher clear and convincing evidence standard. (See *People v. Puente*, *supra*, 165 Cal.App.4th at p. 1147.)

FACTUAL AND PROCEDURAL BACKGROUND

We provide a general background regarding the charges, pleas, and the *Cruz* waiver hearing here. Other facts specific to each issue are included in the relevant discussion section.

Between May 6 and August 9, 2019,[5] defendant was charged in several cases with many crimes, as pertinent here, as follows: (1) Case No. 19F2832 -- possession of a firearm by a felon and possession of a short-barreled shotgun, with both counts carrying four prior prison term enhancements; (2) Case No. 19F4117 -- two counts of possession of a controlled substance for sale, possession of a smoking or injecting device, and destruction of evidence, with both possession of a controlled substance counts carrying prior serious felony and prior prison term enhancements; (3) Case No. 19F4697 -- aid by misrepresentation in an amount over $400 and perjury (misrepresentation case); (4) Case No. 19F4704 -- attempted second degree burglary of a vehicle and possession of a smoking device, with the attempted burglary count carrying two out-on-bail enhancements; (5) Case No. 19F4816 -- possession of a firearm by a felon, illegal possession of ammunition, and possession of a controlled substance, with an associated enhancement on all charges for a prior serious felony conviction; (6) Case No. 19F4821 -- infliction of corporal injury on a spouse or cohabitant with a prior conviction for the same, criminal threats, conspiracy to dissuade a witness, damaging a wireless device, and resisting a police officer, with the first infliction of corporal injury, criminal threats, and conspiracy to dissuade a witness counts carrying prior prison term and out-on-bail enhancements (criminal threats case).

Defendant pled no contest to all charges -- except in the misrepresentation case, to which he pled guilty -- and admitted all enhancements in exchange for a negotiated sentence. He also entered a *Cruz* waiver and acknowledged the trial court would not be bound by the negotiated sentence if he violated the waiver. The *Cruz* waiver provided

---

[5]     All further date references are to 2019 unless otherwise specified.

3

defendant would not violate any law (excluding infractions) between his release date and the date of sentencing. Defendant was then released pending sentencing.

About two weeks later, officers in the City of Anderson Police Department arrested defendant on new charges -- Case No. 19F7452 -- for opening or maintaining a place for the purpose of unlawfully selling, giving away, or using drugs (maintenance case).

Defendant thereafter filed a motion to withdraw his pleas in the cases, which the prosecution opposed, and the trial court denied. The trial court set a concurrent preliminary examination in the maintenance case and a *Cruz* waiver violation hearing. Following that hearing, the trial court found defendant had violated his *Cruz* waiver because he resided at and maintained a residence for the purpose of unlawfully selling or giving away drugs. The prosecutor dismissed the charges in the maintenance case and the trial court sentenced defendant to 20 years in prison. Defendant timely appealed.

DISCUSSION

I

*The Trial Court's Cruz Waiver Violation Finding*

A

*Facts Of The Maintenance Case*

Defendant had an ongoing relationship with three women, to whom the trial court referred to as follows: Tricia McCoshum -- ex-wife;[6] Heather S. -- fiancé;[7] and Stephanie Nugent -- girlfriend. Nugent lived at a house on Ferry Street. When officers of the City of Anderson Police Department executed a search warrant at the Ferry Street address, they did not find any occupants inside. They did, however, detain and interview defendant after he drove by the residence.

---

[6] Due to the common last name McCoshum as to defendant and Tricia, we refer to Tricia by her first name.

[7] Heather S. was the victim in the criminal threats case, as discussed *post*.

4

During the interview, defendant stated he was not staying at Nugent's house and had visited the home only three times; he later said he had stayed there five times. He said Heather picked him up from jail after his release and he stayed with her for two days. On the third day, after they had an argument, Heather dropped defendant off in the City of Anderson, where he went to Nugent's house, which is located on a property where defendant had previously lived. When defendant arrived at the Ferry Street address, there were other people using illegal drugs and he ordered them to leave. Additionally, defendant said he went to the City of Anderson Public Works Department, placed the utility bill for the Ferry Street address in his name, and paid it -- restoring the residence's water service. He also admitted to having some clothing and property at the residence.

In the master bedroom, police found defendant's mail throughout the room and inside a dresser and a red backpack. The room also contained an eviction notice addressed to defendant to remove him from the Ferry Street address, T-shirts matching his size, and several plastic tote bags full of books labeled with defendant's last name.

Regarding evidence of past and continued drug use in the home, the master bedroom contained: two scales; plastic baggies; a glass skull bong; four methamphetamine pipes; a tooter straw;[8] someone's wallet containing foil with a residue consistent with heroin; various debit cards, drivers' licenses, and social security cards; 0.6 grams of methamphetamine; and a notebook related to drug sales.[9] A search of the living room revealed a checkbook inside a shopping cart, three more bongs, and a roll of aluminum foil.

Nugent told the police drug addicts had come and gone from the residence during the weeks prior to the execution of the search warrant. She further told them defendant was

---

[8]     This is a heroin smoking device.

[9]     The notebook was titled, "World dominating notes." The notebook contained names accompanied with labels, such as liar and thief. A police officer testified he believed this notebook tracked people engaged in illegal drug transactions.

homeless but had access to and kept belongings in the master bedroom due to their sexual relationship.

At the *Cruz* waiver violation hearing, Tricia testified Heather dropped defendant off at her house -- a block away from the Ferry Street address -- after defendant was released. She also said defendant lived in a shed behind her home for a majority of the time between his release and subsequent arrest.

Heather testified she had also previously lived at the Ferry Street address. Heather and defendant first lived in the house at the rear portion of the property for an undetermined amount of time, and then moved into the house at the front portion of the property in February or March. Defendant left sometime in July and Heather remained until August 9. The landlord who owned the property on Ferry Street served defendant and Heather with an eviction notice in July. Nugent at some point moved into the house at the front portion of the property, where the search warrant was executed.

The trial court admitted three jail recordings into evidence. In those recordings, defendant and Heather discussed how she was going to pick him up from jail upon his release. Defendant and Tricia assessed the charges brought against Nugent, discussed how defendant's attorney or investigator would contact Tricia so she could tell them he was living at her house in the shed, and how Tricia should address a fight between Nugent and Heather. Additionally, defendant and Heather discussed how Nugent had told Heather that defendant was with Nugent at the Ferry Street address every day since his release.

The trial court cited several pieces of evidence in support of its finding defendant violated his *Cruz* waiver. First, the trial court found defendant stayed with Heather for only two days after his release because one of the jail recordings established Nugent told Heather defendant was with her at the Ferry Street address every day since then. Additionally, the jail recordings revealed defendant attempted to play the women off each other because he told Heather to stop talking to Nugent so that she would take responsibility for the charges in the maintenance case. Turning to defendant's statements, the trial court found his prior

6

eviction from the property, payment of the water bill for the house, expulsion of drug users from the house upon his return, and his equivocating responses as to how long he had stayed there demonstrated a continued interest in the Ferry Street address. In the trial court's view, this evidence was pertinent to the analysis and it clearly established defendant violated his *Cruz* waiver by maintaining the Ferry Street address for the purpose of unlawfully selling or giving away drugs.

B

*Substantial Evidence Supports The Trial Court's Finding*

Defendant asserts the trial court's finding he violated the *Cruz* waiver is not supported by substantial evidence because he lived in Tricia's shed, he visited the Ferry Street address on approximately only five occasions, and the drugs and paraphernalia the police found in the house cannot be attributed to him. The People contend the jail recordings, defendant's own statements -- including that he paid the water bill for and removed drug users from the Ferry Street address following his return to the house -- and defendant's personal belongings found in the master bedroom constitute substantial evidence to support the trial court's *Cruz* waiver violation finding. We agree with the People.

Under section 11366, the prosecution must establish " 'defendant (a) opened or maintained a place (b) with a purpose of continuously or repeatedly using it for selling, giving away, or using a controlled substance.' " (*People v. Franco* (2009) 180 Cal.App.4th 713, 721.) We review the trial court's factual finding defendant violated his *Cruz* waiver under the substantial evidence test. (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.) " 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . .' [Citation.] 'Deferential review is particularly necessary when, as here, the factual determination depends in part on

7

judging a witness's credibility,' and we must uphold such a determination if it is supported by substantial evidence." (*Ibid.*) " '[W]e must consider all the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].' " (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.)

We first address defendant's principal contention he was not living at the Ferry Street address with Nugent. This argument necessarily relies upon the credibility of Tricia because she testified defendant was living in her shed for a majority of the time between defendant's release and subsequent arrest (relevant time period). The trial court, however, implicitly found Tricia's testimony to not be credible because it found defendant lived at the Ferry Street address. We leave such credibility determinations to the finder of fact and rely upon this determination to conclude defendant's principal contention is without merit. (*People v. Rabanales*, *supra*, 168 Cal.App.4th at p. 509.)

" 'To "open" means to "make available for entry" or "to make accessible for a particular purpose" [citation] and to "maintain" means "to continue or persevere in." ' " (*People v. Franco*, *supra*, 180 Cal.App.4th at p. 721.) "To constitute the offense of 'maintaining' there must be some purpose of continuity in the use of the place for the proscribed illegal conduct." (*People v. Holland* (1958) 158 Cal.App.2d 583, 588.) Evidence of a single sale or use is insufficient on its own but will suffice if there exists certain "corroborating circumstances" known to the defendant. (*Id.* at p. 589.)

Here, the trial court heard evidence that defendant had previously lived at the Ferry Street property with Heather and then returned there after his release, when Nugent was living at the property. Defendant further ordered various drug users to leave Nugent's house, placed the residence's water bill in his name, and paid the bill to re-establish water service. And, the police found multiple personal items belonging to defendant in the master bedroom, including his mail, several plastic totes full of books labeled with defendant's last name, the July eviction notice, and T-shirts matching defendant's size. As to drug use and

8

sales, the police found drugs, drug paraphernalia, plastic baggies, and a scale *in the master bedroom* where defendant's belongings were located. More importantly, Nugent told the police drug addicts came and went from the residence in the weeks prior to the execution of the search warrant -- i.e., during the relevant time period. The foregoing constitutes substantial evidence supporting the trial court's finding.

Defendant asserts the drugs and drug paraphernalia found at Nugent's house cannot be attributed to him. He cites no authority for this proposition, and we are aware of none. The drugs and drug paraphernalia provide "corroborating circumstances" of continued drug use in the home. (See *People v. Holland*, *supra*, 158 Cal.App.2d at p. 589.) A trier of fact could reasonably infer defendant knew the drugs and drug paraphernalia were in the master bedroom because it was visible to the police when they entered the bedroom, Nugent told the police defendant had access to the bedroom, and the bedroom contained defendant's personal belongings. (See *ASP Properties Group, L.P. v. Fard, Inc.*, *supra*, 133 Cal.App.4th at p. 1266.) It is further reasonable to infer defendant knew the Ferry Street address was being used to sell or use drugs because he lived there and drug addicts would come and go from the residence in the weeks prior to the execution of the search warrant -- i.e., during the relevant time period. We accordingly find no merit in defendant's argument.

II

*The Trial Court Violated Penal Code Section 654*

The parties agree the trial court sentenced defendant twice -- on the criminal threats and conspiracy to dissuade a witness (conspiracy charge) -- for his single threat to Heather. We agree with the parties.

"Errors in the applicability of [Penal Code] section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal." (*People v. Perez* (1979) 23 Cal.3d 545, 549, fn. 3.) When the facts of a case are undisputed, Penal Code section 654's applicability poses a question of law appellate courts review de novo. (*People v. Corpening* (2016) 2 Cal.5th 307, 312.)

9

The facts of the criminal threats case arise from a roughly 15-minute altercation between defendant and Heather on August 7.  Defendant physically assaulted Heather after an argument regarding his infidelity.  At some point, defendant also threatened to kill Heather if she contacted the police, stating he would burn down the house with her inside.  Defendant pled no contest to, among other charges, criminal threats and conspiracy to dissuade a witness; he also admitted the associated out-on-bail enhancements.  The trial court sentenced defendant to three years on the criminal threats charge and a concurrent two years on the conspiracy charge, plus an additional two years for each of the out-on-bail enhancements.

Penal Code section 654, subdivision (a), prohibits a trial court from imposing concurrent sentences for multiple convictions arising out of the same act.  (*In re Wright* (1967) 65 Cal.2d 650, 653.)  Courts engage in a two-step analysis to determine whether a defendant may be subjected to multiple punishment under Penal Code section 654.  (*People v. Corpening*, *supra*, 2 Cal.5th at p. 311.)  First, a court must examine the facts of the case and "consider if the different crimes were completed by a 'single physical act.' "  (*Ibid.*)  The single physical act analysis "depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses."  (*Id.* at p. 313.)  Under existing law, if a defendant completed the crimes in a " 'single physical act,' " the court imposes the sentence that "provides for the longest potential term of imprisonment" and stays the other.  (Pen. Code, § 654, subd. (a); *Corpening*, at p. 311; *People v. Sanchez* (2016) 245 Cal.App.4th 1409, 1415.)

Here, defendant threatened to kill Heather if she contacted the police and said he would burn down the house with her inside.  The threat was the basis for both the criminal threats and conspiracy charges.  We thus conclude defendant's convictions arose from a single physical act.

Instead of staying the shorter sentence in accordance with Penal Code section 654, subdivision (a), as the statute currently provides (see *People v. Mejia* (2017) 9 Cal.App.5th

10

1036, 1047-1048), we remand for the trial court to resentence defendant. We do so because Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1) was recently enacted and will take effect on January 1, 2022, before defendant's judgment becomes final. The bill amends Penal Code section 654 to provide the trial court with discretion to impose the sentence of either the criminal threats count *or* the conspiracy count, which could result in the trial court imposing the shorter rather than the longer sentence. We thus conclude it is appropriate to remand the matter for resentencing. (See *In re Estrada*, *supra*, 63 Cal.2d at pp. 744-745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect]; see also *People v. Woods* (2018) 19 Cal.App.5th 1080, 1090-1091.)

## DISPOSITION

We reverse the judgment as to the sentences imposed on the criminal threats and conspiracy to dissuade a witness counts in case No. 19F4821, and remand for the limited purpose of having the trial court resentence defendant as to those counts, as provided in this opinion. In all other respects, the judgment is affirmed.


/s/
Robie, Acting P. J.


We concur:


/s/
Mauro, J.


/s/
Hoch, J.


11