[Crim. No. 5502. Second Dist., Div. Three. Feb. 16, 1956.]

THE PEOPLE, Respondent, v. EDWARD E. SHIVERS, Appellant.

Harrison M. Dunham for Appellant.

Edmund G. Brown, Attorney General, and Arthur L. Martin, Deputy Attorney General, for Respondent.

VALLÉE, J.—A jury found defendant guilty of robbery and that it was of the second degree. He appeals from the judgment. His only point is that the evidence was insufficient to support the verdict.

On April 12, 1955, Yokata worked as an attendant at a service station at 42d and Figueroa streets in Los Angeles. His hours were from 4:30 p. m. until 10 p. m. About 8:30 p. m. he was approached by a man who said, "This is a stick-up," or words to that effect. The place was brightly illuminated by floodlights. There was nothing covering the man's face. He was dressed in a matching tan outfit. Yokata testified defendant was the man. Defendant told Yokata to act natural and walk to the cash box without looking back. Defendant had his right hand in his coat pocket in a manner which kept his coat pointed up and out about waist-high.

Defendant took about $130 or $140, largely in $1.00, $5.00, and $10 bills, from the cash box and the safe; and told Yokata to go into the rest room, which he did. He stayed there about three minutes and then called the police. Yokata testified he believed defendant had a gun, that he (Yokata) was frightened and "had a small tied knot in the bottom of . . . [his] stomach."

A witness for the People testified he saw and had a short conversation with defendant in a bar at 4210 South Figueroa Street in the early evening "shortly after 7:30" on April 12, 1955. He left the bar before 8 o'clock. Defendant was there when he left. The service station was across an alley from the bar. A police officer, who arrested defendant in his room on the night of April 12, testified defendant had 31 dimes and 22 $1.00 bills in his wallet and on a night stand. Defendant told the officer the money was what he had left of $200 he had borrowed from a friend; that he had borrowed the money two days before, sent his mother $50, and paid $35 room rent.

The defense was an alibi. Defendant denied the robbery. He testified he left the bar about 7:45, walked north on Figueroa Street, entered the Figueroa theater about 8:05, met "Lucky" Beaushane in the lobby, with "Lucky" bought some peanuts and Coca-Cola; he and "Lucky" went into the theater; the picture "Battle Cry" was on; he saw the picture and remained in the theater until about 10 or 10:15, when he left in the middle of the second picture, "Captain Lightfoot"; he left "Lucky" in the theater, went to his room in a hotel on Santa Barbara Avenue just off Figueroa Street, telephoned

his mother in Nebraska, paid his rent, went to the room of a friend of his, left and made some purchases, returned to his room and let the officers in about 12:10 a. m.; he had previously owned the service station which was robbed; he knew the construction of the safe; he had previously been convicted of a felony. Beaushane testified defendant was in the Figueroa theater on April 12, 1955, from about 8:10 p. m. until 10 or 10:15; "Battle Cry" was on when they went in; he left about 11:35; he saw "Battle Cry," then "Captain Lightfoot," and another part of "Battle Cry."

In rebuttal the manager of the theater testified that on April 12, 1955 "Captain Lightfoot" started at 7:08 p. m. and ran continuously until 8:39, followed by an intermission, coming attractions, and a newsreel; "Battle Cry" started at 8:56, ran continuously until 11:22, and was followed by "Captain Lightfoot" until 1 a. m.; "Battle Cry" was a very long feature which ran 2 hours and 26 minutes.

The evidence supports the verdict. The fact that there were slight discrepancies between the testimony of Yokata at the preliminary hearing and at the trial is not ground for reversal as a matter of law. (*People* v. *Miller*, 134 Cal.App.2d 792, 796 [286 P.2d 415].) The effect, if any, of such discrepancies on the credibility of Yokata was for the trier of fact. (*People* v. *Connelly*, 195 Cal. 584, 593 [234 P. 374].) The alibi was not uncontroverted, as defendant asserts. It was directly controverted by the testimony of Yokata and by that of the theater manager. Resolution of the conflict was also for the trier of fact. (*People* v. *Murieta*, 1 Cal.App.2d 727, 728 [37 P.2d 158].) The jury did not have to believe the testimony of defendant or that of Beaushane; they could reject all or believe part and disbelieve the remainder. (*People* v. *Batwin*, 120 Cal.App.2d 825, 827 [262 P.2d 88]; *People* v. *Dragoo*, 121 Cal.App.2d 322, 324 [263 P.2d 90].) "Battle Cry" was run only once from 8:56 p. m. to 11:22 p. m. If, as defendant and Beaushane testified, defendant entered the theater shortly after the start of "Battle Cry," he arrived after 8:56. The robbery of the service station occurred about 8:30 p. m. The theater was only a short distance from the service station. The jury may fairly have concluded that defendant, after robbing the station, went directly to the theater.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.