Filed 3/27/26  P. v. Esquivel CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE, | C101817 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF190003080) |
| v. | |
| VICTOR HUGO VIVANCO ESQUIVEL, | |
| Defendant and Appellant. | |

Defendant Victor Hugo Vivanco Esquivel appeals from a judgment in which the trial court sentenced him to an aggregate term of 32 years to life imprisonment.  He contends that:  (1) substantial evidence did not support instructing the jury on contrived self-defense; (2) his trial counsel was ineffective for failing to object to a statement made by the prosecutor during summation; and (3) cumulative error compels reversal.  Finding no merit to these contentions, we affirm.

# I. BACKGROUND

The People charged defendant with willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 187, subd. (a), 664)[1] and assault with a semiautomatic firearm (§ 245, subd. (b)). As to the attempted murder, the People alleged defendant personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)). As to the assault, the People alleged defendant personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)).

In 2021, a jury found defendant guilty of the charged offenses and found true the enhancement allegations. The trial court sentenced defendant to an aggregate term of 32 years to life imprisonment.

On appeal, a different panel of this court reversed the judgment, concluding that the trial court prejudicially erred in excluding evidence that defendant believed the victim was affiliated with a gang. (See *People v. Esquivel* (Dec. 23, 2022, C094455) [nonpub. opn.].)

A second trial commenced in April 2024.

## A.    *Norma's Testimony*

Norma testified she was working at a restaurant in Yuba City on the evening of November 8, 2019. There was a woman with a baby in the restaurant; the woman looked like she had been crying. Defendant walked in and tried to pull the woman to his car. Then, the victim walked in to collect a takeout order. The victim asked defendant, " 'Are you going to start your shit here?' " in Spanish. Defendant pulled out a gun and pointed it at Norma and the victim. Norma grabbed her daughter and ran to the freezers. Norma saw defendant chase the victim through the dining area and fire two or three shots.

---

[1] Undesignated statutory references are to the Penal Code.

Norma then saw defendant hitting the gun with his hand as "his gun was freezing." Norma did not see the victim charge defendant or try to hit defendant, and the victim did not have any weapons.

Norma then saw defendant run out of the restaurant. She went to the victim, who was lying face down on the patio. Norma flipped over the victim and saw he had a hole in his cheek.

### B.    *Juan's Testimony*

Juan was also in the restaurant on the evening of November 8, 2019. Juan testified that the victim was in the restaurant waiting for his food when defendant came in and angrily told the woman with the baby, " 'Get in the fucking car' " in Spanish. The victim told defendant, " 'You are going to start your stuff here too?' " in Spanish. The victim had no weapons. Defendant then left and came back a few seconds later with a gun pointed at the victim's head. Defendant had his finger on the trigger and "clicked it twice because you could hear the gun go click-click, but it didn't go off." Defendant then bumped the gun hard. The victim ran through the dining area. Juan heard a gunshot from the freezer, and then heard a second gunshot shortly after he returned to the register. Prior to that, Juan did not hear "any other bang" or shots.

### C.    *Wade's and Katherine's Testimony*

Wade and Katherine were dining together at the restaurant on the night of the incident. Katherine saw a distraught woman at the register with a baby. Katherine then saw two men come into the restaurant; they were arguing with someone outside. She then saw a gentleman motion with his hands for someone to " '[c]ome in.' " She heard a gunshot, turned around, and saw defendant with a gun. She had not heard any gunshots prior to this point. She saw defendant point the gun toward the back of the restaurant and fire it again.

3

Wade saw the victim giving hand gestures to defendant but did not see anything in the victim's hands. Wade then saw defendant come in through the front door with a gun up, chase the victim, and pull the trigger of the gun.

D.     *Defendant's Testimony*

Defendant testified that earlier in the evening on November 8, 2019, he was attacked at a residence. Defendant said that the victim was present during this attack and was pointing a gun at him. Defendant testified that the victim ultimately hit him in the face with his hand, kicked him in his legs and groin, and told defendant to leave the neighborhood. Defendant said the victim was making hand gestures while holding the gun and defendant believed the victim was a gang member.

Defendant then went to the restaurant to meet his girlfriend and their baby. His girlfriend came out of the restaurant, approached defendant in his car, and asked for diapers to change the baby. Defendant then saw the victim walking toward defendant's car. Defendant testified the victim was "doing signs," saying " 'This is my neighborhood. Leave. If not, I'm going to kill you,' " before walking into the restaurant. Defendant then said he heard a gunshot, got scared, grabbed his gun and a magazine for the gun, and went into the restaurant. The victim ran into the dining area. Defendant tried to load the magazine into the gun but was having difficulty doing so. The gun accidentally fired in the process. According to defendant, after this shot, the victim turned around and moved his hand to his waist. Defendant believed the victim had a gun and was going to shoot him. Defendant then fired his gun a second time, hitting the victim.

E.     *Jury Instructions*

The trial court instructed the jury with CALCRIM No. 603 [attempted voluntary manslaughter: heat of passion] and CALCRIM No. 3472 [right to self-defense: may not be contrived]. CALCRIM No. 603 states in relevant part that a person attempts to kill someone because of a sudden quarrel or in the heat of passion if "provocation would have

4

caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment." CALCRIM No. 3472 states: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

The trial court also used CALCRIM Nos. 104 and 200 to instruct the jury that the attorneys' arguments are not evidence and the jury must follow the law, rather than the attorneys' arguments, if the two conflicted.

## F.      Closing Argument

In summation, the prosecutor discussed the elements of the lesser included offense of attempted voluntary manslaughter under a heat of passion theory:

"Attempted voluntary manslaughter, heat of passion. Again, took one step? Yes. Intended to kill? Also yes. [¶] Attempted the killing because he was provoked. I don't think so. Provocation in order to warrant killing someone has to be pretty substantial. In this case it wasn't. [¶] The provocations would have caused a person of average disposition to act rationally and without due deliberation. That is from passions rather than judgment. Again, I don't think so. No reasonable person would think to shoot someone multiple times because they raised their arms, made a sign, wiggled their fingers."

Defense counsel argued in summation that defendant acted in self-defense, and that if the jury concluded as such, they must find defendant not guilty of all charges.

## G.      Verdict and Sentencing

The jury found defendant guilty of attempted murder and assault with a semiautomatic firearm and found true the firearm and personal injury allegations. But the jury found that the attempted murder was not committed willfully, deliberately, and with premeditation. The trial court sentenced defendant to seven years (the middle term) for the attempted murder plus 25 years to life for the associated firearm enhancement. The court sentenced defendant to three years for the personal injury enhancement associated

5

with the attempted murder conviction, but stayed that sentence pursuant to section 654. The court also sentenced defendant to six years (the middle term) for the assault conviction plus four years for the associated firearm enhancement and three years for the associated personal injury enhancement, but stayed the sentence for this offense and enhancements.

Defendant timely appealed.

## II.  DISCUSSION

Defendant contends there was insufficient evidence to support instructing the jury on contrived self-defense.[2]

It is error to give an instruction that has no application to the facts of the case, as there must be substantial evidence to support the instruction.  (*People v. Cross* (2008) 45 Cal.4th 58, 67; *People v. Campbell* (1994) 25 Cal.App.4th 402, 408.)  "Substantial evidence is evidence that would allow a reasonable jury to find the existence of the facts underlying the instruction."  (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1290.)  In determining whether substantial evidence supports a jury instruction, "we view the

---

[2] The People argue defendant forfeited his claims of instructional error by failing to object in the trial court.  "Generally, failure to object does not waive an instructional error on appeal if the instruction was an incorrect statement of law or the defendant's substantial rights were affected."  (*People v. Vega* (2015) 236 Cal.App.4th 484, 495; see also § 1259.)  "Substantial rights" are equated with errors resulting in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818.  (*People v. Arredondo* (1975) 52 Cal.App.3d 973, 978.)  "Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was."  (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)  Accordingly, we will address the merits to ascertain whether the alleged errors affected defendant's substantial rights.

evidence most favorably to the judgment presuming the existence of every fact that reasonably may be deduced from the record in support of the judgment." (*Ibid*.)

Here, substantial evidence supports the challenged instruction. Defendant insists "[t]here was no evidence to show he initiated the encounter with [the victim] at the restaurant." We disagree, as multiple witnesses testified defendant was the first and only person to pull out a gun and fire it. Defendant focuses on his account of self-defense, but a factfinder did not have to credit his testimony in its entirety given the other evidence in the record. (See *People v. Shivers* (1956) 139 Cal.App.2d 275, 277 ["The jury did not have to believe the testimony of defendant . . . ; they could reject all or believe part and disbelieve the remainder"]; see also CALCRIM No. 226 ["You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe"].) Though defendant claimed he heard a gunshot and that this prompted him to grab his gun and run into the restaurant to confront the victim, a reasonable factfinder could conclude that defendant heard no such gunshot—especially given that, in other witness accounts, the first shot fired came from defendant's gun after defendant entered the restaurant. Defendant also claimed he fired his first shot unintentionally, which is what prompted the victim to turn around and move in a manner that caused defendant to shoot again. But given the circumstances and other witness testimony, it could be inferred that defendant intended to fire his first shot. From this, a jury could rationally conclude that defendant provoked a fight to create an excuse to use force.

Next, defendant argues the prosecutor misstated the law regarding attempted voluntary manslaughter under a heat of passion theory during closing argument. In defendant's view, the prosecutor's statement that "[n]o reasonable person would think to shoot someone multiple times because they raised their arms, made a sign, wiggled their fingers" was inconsistent with the legal standard that the provocation would have caused a person to act out of passion. Defendant acknowledges his trial counsel failed to object

on this basis, but argues that the failure to object constitutes ineffective assistance of counsel.

To establish a claim for ineffective assistance of counsel, defendant must show his counsel's performance was deficient and that he suffered prejudice as a result. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) We presume that "counsel's actions fall within the broad range of reasonableness, and [we] afford 'great deference to counsel's tactical decisions.' " (*Ibid.*) We will reverse only if there is affirmative evidence that counsel had no rational tactical purpose for an act or omission. (*Ibid.*) If the record on appeal sheds no light on why trial counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one or there could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) A defendant thus bears a difficult burden when asserting an ineffective assistance claim on direct appeal. (*Mickel, supra*, at p. 198.)

" '[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one . . .' [citation], and 'a mere failure to object to . . . argument seldom establishes counsel's incompetence.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 675.) Even where an objection would have been successful, competent counsel "could have preferred not to draw the jurors' attention to particular comments by the prosecutor by objecting to them." (*People v. Huggins* (2006) 38 Cal.4th 175, 206; see also *People v. Aguirre* (2025) 18 Cal.5th 629, 707 [" 'From a strategic perspective, . . . many trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality' "].)

Even assuming an objection to the prosecutor's statement would have had merit, we perceive reasonable tactical grounds for why defendant's trial counsel might have

8

declined to object. The challenged comment was a small part of a lengthy closing argument that spanned 20 pages in the reporter's transcript. Given this, it is entirely possible trial counsel wanted to avoid drawing the jury's attention to the comment—especially since the jury was instructed to follow the law, rather than the attorneys' arguments, if the two conflicted. (See *People v. Milner* (1988) 45 Cal.3d 227, 245, disapproved on other grounds by *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13 ["Even if one or more of the statements were improper, none of them took up more than a few lines of the prosecutor's lengthy closing argument. Defense counsel would therefore have been well within the bounds of reasonable competence had he chosen to ignore the statements rather than draw attention to them with an objection"]; *People v. Ramirez* (2019) 40 Cal.App.5th 305, 311 [finding no deficient performance for failure to object to prosecutor's comments in closing argument because "the jury may have looked bored, and the stimulus of an objection may have awakened the jurors' interest in a counterproductive way"].) Moreover, defense counsel might have decided to allow the challenged comment to pass without objection because objecting would risk causing the jury to focus on the lesser included offense rather than on whether defendant acted in self-defense. Accordingly, defendant has not established that his counsel's performance was deficient, and his claim of ineffective assistance of counsel fails.

Lastly, defendant contends that the accumulation of the errors he raises on appeal undermined his right to a fair trial. Having found no errors, this claim is necessarily without merit. (See *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1068.)

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

DUARTE, Acting P. J.

/S/

MESIWALA, J.

10